# FAULK v. McPHERSON.—182 S. W. (2d) 130.

Western Section.  February 26, 1943.

Petition for Certiorari denied by Supreme Court, May 29, 1943.

King, King & Laughlin, of Memphis, for plaintiff in error.

William C. Tipton, of Covington, and Waring, Walker & Cox, of Memphis, for defendant in error.

BAPTIST, J. The plaintiff, M. W. Faulk, sued the defendant, Donald A. McPherson, in the Circuit Court of Shelby County, for damages alleged to have been sustained by the plaintiff in a collision between his automobile and that of the defendant. The case was tried by a jury and a verdict returned in favor of the defendant. The plaintiff's motion for a new trial was overruled. The plaintiff has appealed and assigned errors to this action.

The collision between the cars occurred on Highway No. 70 on October 17, 1941. This is a two-lane concrete highway, and at the point of the collision the highway runs approximately east and west. It was dark and raining at the time, consequently conditions for driving were poor. The collision occurred a short distance west of the village of Keeling, and immediately west of a filling station located on the highway. The filling station is

near the crest of a hill which approaches it from the east and from the point where the filling station is located the highway slopes downward in a westerly direction. At a point two or three hundred yards from the filling station a gravel road enters the highway from the north.

The plaintiff, who lived several miles west of the scene of the collision, on the late afternoon or night of the same day had taken some cotton pickers home. These parties lived a mile or more east of Keeling and in taking them home the plaintiff had traveled on dirt roads. In returning from that mission and shortly before reaching the concrete highway his car got stuck in the mud and had to be pushed out. He entered the highway from a dirt road approximately a mile east of Keeling, and then drove west at a speed of some twenty to twenty-five miles per hour. He testified that his purpose was to turn from the highway into the gravel road west of the filling station, that being his nearest way home and when he reached the point a hundred or hundred and fifty feet from the gravel road and while traveling fifteen or twenty miles per hour he was struck from behind by the defendant's car, the force of the collision driving his car down the .highway and into the gravel road, where it turned over on its side, and the plaintiff was injured. He testified that all of his car lights including the rear light were burning at the time; that at the time his car was stuck in the mud he checked all of the lights and they were all burning; that he slowed his speed as he approached the gravel highway to make the turn; that he gave no signal of his intention to make the turn because he hadn't gotten close enough to the gravel road to give such signal.

The defendant testified that he left Nashville about 1 o'clock in the afternoon driving a Buick automobile; that his usual driving speed on a trip of the kind he was

making was fifty miles per hour, but that in the late afternoon it began to rain and he slowed his speed for that reason; that as he approached the filing station at Keeling he took the same to be a road intersection and slowed his speed still more; that when he reached the crest of the hill at the filling station a number of cars were approaching from the west and that the headlights of these cars interfered somewhat with his vision and that he began to ride the brakes slowing the speed of his car still further; that he was unable to state the rate of speed he was making immediately before the collision, but that he was not going more than forty miles per hour; that the next morning after the collision the plaintiff told him that he, the plaintiff, had just about stopped and that he was not going more than five miles per hour; that as he left the crest of the hill the lights of the cars approaching became brighter, making it more difficult for him to see; that suddenly the back of plaintiff's car loomed up within thirty or forty feet of him; that it looked to him like the plaintiff's car was not moving at all; that there was a ditch on his right hand side so that he could not turn his car in that direction; that the oncoming cars from the west made it impossible for him to turn to the left; that he applied his brakes in full force immediately and turned his car to the left as far as he could safely do; that his car stopped almost immediately after the collision, moving less than half its length and stopped about eight or ten feet west of the point of impact, with its left front wheel three or four inches south of the center line of the highway; that after the collision the cars were twenty-five or thirty feet apart. The defendant further testified that he could not see any light on the rear of plaintiff's car before the collision; that if such light was there it was covered with mud; that the plaintiff

gave no warning or signal of his intention to turn off into the gravel road.

The first assignment of error is to the effect that there is no evidence to sustain the verdict, and the brief of the plaintiff calls the Court's attention to the proposition that if the verdict be sustained by any evidence it will not be disturbed by this Court on appeal. Gulf Compress Co. v. Stuyvesant Ins. Co., 129 Tenn. 586, 167 S. W. 859. And that in passing upon this assignment this Court takes as true the strongest legitimate view of the testimony in favor of the successful party, and discards all countervailing testimony because the jury, whose exclusive province it was to pass upon the credibility of witnesses, has by its verdict resolved all conflicts in his favor. Railroad Co. v. Abernathey, 106 Tenn. 722, 64 S. W. 3.

The plaintiff very earnestly contends that there is no evidence to sustain the verdict of the jury in favor of the defendant, which is equivalent to saying that there was no evidence in the case which justified the trial court in submitting to the jury the questions as to whether the defendant was guilty of negligence or whether the plaintiff was guilty of contributory negligence.

The evidence of the defendant viewed in the most favorable light to him, is that the night was dark and rainy making driving difficult; that he was driving his car at a moderate rate of speed under the circumstances; that he had his car under full control; that his foot was on the brake, ready for instant application; that he was more or less blinded by the lights of approaching cars; that the plaintiff had reached a point within twenty-five or thirty feet of the gravel road; that plaintiff had slowed the speed of his car until it was barely moving; that plaintiff gave no signal of his intention to make a

turn, had no light on the rear of the car visible to the defendant, nor any reflector in the rear; that all defendant could see was a black bulk of car in the road; that he could not turn to the right because of the ditch on that side; that he could not turn to the left on account of incoming traffic; that on seeing plaintiff's car he instantly applied his brakes in full force; that he was so close that he could not avoid the collision; that after the collision defendant's car did not move half its length.

In view of this testimony of the defendant can it be said that there was no testimony to sustain the verdict of the jury? Or can it be said that the defendant under this testimony was guilty of negligence as a matter of law?

These propositions are not true unless this case is controlled by the rule laid down by Judge Neil in West Const. Co. v. White, 130 Tenn. 520, 172 S. W. 301, in which it was said that the driver of an automobile is not exercising ordinary care if he is driving the car at such rate of speed that he cannot bring it to a standstill within the distance that he can plainly see objects or obstructions ahead of him.

In the case of Main St. Transfer & Storage Co. v. Smith, 166 Tenn. 482, 63 S. W. (2d) 665, 668, Judge Swiggart reviewed the case of West Const. Co. v. White and the other cases adhering to the rule therein laid down, and states that the rigor of the rule was relaxed, or its application denied, by the Court of Appeals, in two cases in which the court denied petitions for the writ of certiorari. After reviewing these two cases the court said:

"The rule formulated and applied in West Construction Co. v. White was no more than an application to given facts of the familiar rule that the test of negligence is whether the action under scrutiny was in accord with

the actions of reasonably prudent men under the same or similar circumstances. This was recognized by the able opinions of the Court of Appeals in the last two cases cited, in which it was ruled that exceptional circumstances made the applicability of the general rule a question of fact for the jury rather than a question of law for the court.

"The accident in which petitioners were injured occurred on a state highway, between two populous communities. This highway, as well as others of like character, was built to accommodate vehicles traveling at a high rate of speed. Speed as a factor of negligence in the operation of an automobile has been rendered of minor importance by common experience and by the removal of an arbitrary miles per hour limit from the statutes. These conditions have relatively increased the degree of negligence and danger involved in the parking of stationary vehicles or other obstructions on the paved surface of a highway. Travelers have become more confident of a free and unobstructed passage ahead on the highways. In these circumstances we cannot now say with confidence, as a matter of law, that a person of ordinary prudence and caution would have reduced his speed below the rate of 25 miles an hour on approaching the crest of a grade, under the conditions in which petitioners were placed, because the surface of the pavement could not be seen beyond the crest. They had the legal right to expect that an obstruction just beyond the crest would be evidenced by a warning light, and whether they were proceeding negligently was at least a question of fact for the jury.

"Adhering to the general rule that it may be negligence in law to operate an automobile through darkness at a rate of speed which will not permit the avoidance of an

obstruction disclosed by the rays of the lights with which the automobile is equipped, we are of opinion, and so rule, that exceptional circumstances will render the rule inapplicable, as contrary to the practice and experience of persons of ordinary caution and prudence. The emergencies and hazards of present-day travel by automobile are many and varied, and we think no arbitrary or universal definition of the circumstances which will render the rule inapplicable is possible. The facts and circumstances of the cases in which the rule is invoked, weighed in the light of observation and experience, must control and direct the ruling of the court in each particular case, as in other negligence cases.''

■■ We think that under the facts of this case it was clearly a matter for the jury to determine whether the defendant was guilty of negligence. The jury having found that question in his favor and there being evidence to sustain that finding, this Court has no right to disturb it. The first assignment of error is, therefore, overruled.

■ The second assignment of error complains of the action of the Circuit Court in admitting the testimony of the witness Kelly as to how the defendant was driving his car before he got to the Tennessee River.

The declaration alleged that the defendant was operating his car ''at a high and dangerous rate of speed under the circumstances—towit: 50 to 60 miles per hour.'' The defendant testified that at the time of the collision and at all times during the trip from Nashville he was driving at a moderate rate of speed, and further that he left Nashville about one P. M. and that the collision occurred at between 7:30 and 8 P. M.

The court permitted the witness, Kelly, over the objection of the plaintiff to testify that he observed the manner of the defendant's driving several times during

the day on the trip from Nashville; that he first noticed the defendant where there was an accident at the Tennessee River, and from that time on he had occasion to see the defendant driving; that defendant passed him once and that he passed the defendant once; that he was able to see the manner in which defendant was driving and that: "His driving from all indication was careful as one could drive. Nothing abnormal about his driving at all."

In the case of Mason v. James, 19 Tenn. App. 479, 89 S. W. (2d) 910, 912, the Court said:

"It is generally held that the admissibility of evidence of speed at other times and places is committed to the sound legal discretion of the trial court and that his exercise thereof will not be reviewed except from abuse resulting in prejudice to the complaining party" and that: "It seems, however, that remoteness of evidence of speed at other times and places goes to the weight to be accorded to it rather than its admissibility. It has also been held that improper evidence of speed is not generally harmful."

We do not think that the Circuit Court abused its discretion in admitting this evidence and, therefore, the second assgnment of error is overruled.

The third assignment is alleged as error on the part of the Court in giving the following instructions for the defendant:

"I charge you that the party, the plaintiff or defendant who introduces the witness and puts him on the stand vouches for the credibility of the witness."

The occasion of this charge was the testimony of Dr. Meyer who was introduced as a witness by the plaintiff. Dr. Meyer an orthopedic surgeon testified that he treated the plaintiff from October 18, 1941, and that the last time

he saw him was in February 1942; that the plaintiff complained of pains in his neck, his head and the lower part of his back, and that he gave plaintiff different treatments to relieve the pain; that he diagnosed the injury as an acute sprain of his neck and back. On cross examination he testified that he was not able by use of X-ray or other treatments to discover any objective symptoms of injury; that the plaintiff continued to complain of pains but that he was unable to find anything causing them, and that there was no limitation of movement of the neck; that he never found anything wrong with him from a clinical angle. The conclusion of his testimony was as follows:

"Re-direct Examination

"By Mr. King:

"Q. Doctor, you mean you hadn't found anything the matter with him; you were just trying treatments on him? A. I hadn't found anything that would type up with his complaint; I never questioned the fact he had pain in his neck.

"Q. You were subpoenaed yesterday, weren't you? A. Yes, last night.

"Q. And claimed your exemption? A. Yes.

"Q. Yesterday afternoon, Mr. Keesee talked to you, didn't he? A. I don't know whether he talked to me; I think he talked to my secretary.

"Q. Didn't he come down to see you, and didn't you say some arrangement would have to be made to pay your expenses in this case before you would testify? A. Yes.

"Q. You said the same thing to me today? A. Yes.

"Q. I told you in case of recovery, we would see your bill was paid? A. That is right.

"Mr. King: And you wouldn't testify until that was done. That is all. That is treating him as an adverse witness, your Honor.

"Mr. Cox: I don't think that qualifies him as an adverse witness.

"The Court: No, it does not; he is still your witness.

"Mr. King: I am asking the right to prove those things.

"The Court: I let you prove it then, but not to state to the jury he was an adverse witness.

"Mr. King: I withdraw that statement."

The charge of the court was to the effect that by introducing the witness, the plaintiff vouched for his truthfulness. This was a correct statement of the law. In Hale v. Johnston, 140 Tenn. 182, 192, 203 S. W. 949, 954, the rule is stated:

"If a party calls a witness and examines him upon a single point, the other party is then at liberty to cross-examine him generally, and, of course, it has never been doubted that, when a litigant tenders a witness to testify in his behalf, he thereby vouches for his credibility. This extends to the whole case."

The third assignment of error is without merit and is overruled.

■ The fourth assignment of error is to the refusal of the court to give the plaintiff's special request that the driver of an automobile at night must drive his automobile at such rate of speed that he will be able to stop his car within the distance lighted by his headlights, and that failure to do so is negligence, and relies upon West Const. Co. v. White and other cases in support of same.

We have heretofore discussed that case and the cases modifying the rule enunciated therein, and it is unneces-

sary to comment further on them.

In the Court's charge the following statement was made:

"Something, gentlemen of the jury, has been said in the argument in reference to one driving an automobile at such a speed that he cannot stop the automobile within the range of his lights; and the law says, as a general rule that for one to drive an automobile at such a speed that he cannot stop it within the range of his lights is not the exercise of reasonable and ordinary care. But it also says that the driver of an automobile on a highway, when he is in the position that there is traffic coming towards him, with the lights of vehicles approaching, casting their light upon him and blinding him wholly and partially, that when that situation arises, then it becomes a question of fact for you gentlemen to say whether, under the particular facts and circumstances surrounding the driver at the time, whether he was driving the automobile as a reasonably and ordinarily prudent person, situated like the driver was under those circumstances, and if he measures up to that standard, he would not be guilty of negligence, and if he fell below it, then he would be."

This is a correct statement of the law and the request was properly refused.

The judgment of the Circuit Court is affirmed.

Anderson, P. J., and Ketchum, J., concur.