**James R. SIPES, Appellant (Plaintiff Below),**

v.

**OSMOSE WOOD PRESERVING COMPANY OF AMERICA, INC., Appellee (Defendant Below).**

No. 11S01-8912-CV-00903.

Supreme Court of Indiana.

Dec. 7, 1989.

David S. McCrea, McCrea & McCrea, Bloomington, for appellant.

James D. Witchger, William T. Graden, Rocap Witchger & Threlkeld, Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant James R. Sipes contends that the Court of Appeals did not properly apply the appropriate standard of review for a Trial Rule 50 motion when it affirmed the trial court's grant of judgment on the evidence on Sipes's claim for punitive damages. We agree.

Sipes filed a tort action against Osmose Wood Preserving Company of America, Inc., after he became extremely ill subsequent to sawing wood treated with a chemical compound of chromium, copper and arsenic (CCA) manufactured by Osmose. Sipes based his suit on negligence, strict liability, and intentional failure to warn. He sought both compensatory and punitive damages.

At the close of Sipes' case in chief, Osmose moved for judgment on the evidence pursuant to Trial Rule 50, Indiana Rules of Trial Procedure. The trial court granted the motion on the punitive damages claim. The Court of Appeals affirmed, with Chief Judge Ratliff dissenting. *Sipes v. Osmose Wood Preserving Co.*, No. 11A01–8711–CV–274 (Ind.App., Aug. 16, 1988) [528 N.E.2d 121 (table)]. We grant transfer.

This Court described the appellate standard for reviewing grants of Trial Rule 50 motions in *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205:

> It is axiomatic that in reviewing the trial court's ruling on a motion for judgment on the evidence *the reviewing court must consider only the evidence and reasonable inferences most favorable to the nonmoving party.* Judgment on the evidence in favor of the defendant is proper when there is an absence of evidence or reasonable inferences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference which is in favor of defendant. If there is any probative evidence or reasonable inference to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper.

*Id.* at 206–07 (cites omitted, emphasis added). The Court of Appeals cited this standard. The court went on, however, to compare the evidence supporting the punitive damages claim with the evidence in opposition; it concluded that in light of Osmose's responses the evidence presented by Sipes did not rise to the clear and convincing

level necessary to show "the requisite intent on the part of Osmose to support the punitive damage question going to the jury." *Sipes,* slip op. at 8.[1] By weighing all the evidence relevant to punitive damages, the Court of Appeals applied the *Jones* test incorrectly. We now reapply the test, considering only the evidence most favorable to Sipes and all reasonable inferences therefrom.

■ Sipes identifies a variety of evidence in the record that he believes proves that Osmose consciously and intentionally engaged in misconduct, knowing that such misconduct would probably result in injury to users like himself.

First, Sipes states that Osmose consciously and intentionally misled customers by distributing an advertising brochure which described CCA treated wood as having "virtually the same characteristics as untreated wood" and did not warn that the wood contained arsenic. There is evidence in the record to support Sipes' argument. The brochure containing the above language was admitted into evidence. Record at 333. Furthermore, while corporate counsel for Osmose acknowledged that the treated wood was not chemically similar to untreated wood, he stated that when he was preparing the brochure it "never occurred" to him to let people know that arsenic was present in the wood. Record at 583, 585.

Next, Sipes contends that Osmose was aware of two incidents involving injury to people who worked with wood treated with chemical compounds containing arsenic but did not report the incidents to the EPA despite the fact that other wood users could be injured. Evidence was presented to support this contention. The record shows that in 1977 a technical representative reported to the American Wood Preservatives Institute Committee on Arsenic that carpenters in Canada had experienced irritated throats and had coughed up blood after cutting arsenic treated wood with power saws. Record at 388–90. Osmose was represented on the committee when the report was made. Record at 386. The record also shows that corporate counsel for Osmose was aware that between 1976 and 1980 graduate students at the University of Illinois suffered nose bleeds and coughed up blood after sanding arsenic treated wood with power tools. Record at 546.

Sipes' third contention is that Osmose withheld information from purchasers about toxic chemicals released when CCA treated wood is burned. At trial, corporate counsel for Osmose admitted that Osmose had known since 1979 that burning CCA treated wood produced a toxic chemical, arsenic trioxide, in the smoke and ash. Record at 884. He also testified, however, that Osmose thought it "unnecessary" to warn end users that the chemical is released when the wood is burned by including that fact in the brochure accompanying the wood. Record at 884. The brochure

1. The Court of Appeals also cited *American Optical Company v. Wiedenhamer* (1983), Ind., 457 N.E.2d 181, for a definition of its "duty" in reviewing a Trial Rule 50 motion:

Determining whether or not evidence is sufficient for the purpose proffered requires both a quantitative and a qualitative analysis with the avowed purpose of determining whether or not it can be said, with reason, that such purpose was thereby fulfilled. If opposite conclusions could, with reason, be drawn then it cannot be said that the evidence was insufficient. The key word that is present in all of our variously worded explanations, by inference if not expressly, is "reasonable." Quantitatively, evidence may fail only if it is absent, that is only when there is none at all. Qualitatively, however, it fails when it cannot be said, with reason, that the intended inference may logically be drawn therefrom; and

this may occur either because of an absence of credibility of the witness or because the intended inference may not be drawn therefrom without undue speculation. The use of such words as "substantial" and "probative" are useful in articulating the methodology, because they focus our attention upon the qualitative aspects of the issue and succor objectivity where subjectivity is wont to go. 457 N.E.2d at 184. This language explains what an appellate court is to look for when it "consider[s] only the evidence most favorable to the party against whom the motion for directed verdict was made and all reasonable inferences from such evidence." *Id.* at 183. *American Optical* does not enhance the appellate court's role in assessing the evidence. Evidence will be qualitatively insufficient in only the most extreme cases.

distributed to users is part of the record; it says only that "all weather wood should not be burned either indoors or outdoors." Record at 333.[2]

Fourth, Sipes claims that the jury could infer that Osmose intentionally withheld for two years implementation of its own CCA wood information program, which included safety information, as part of an effort to induce the EPA to halt its registration review process on inorganic arsenic (RPAR). The evidence favorable to the proposed inference includes a 1982 letter to EPA from the wood preserving industry, including Osmose, stating that the information program was proposed "as a first step toward quickly resolving the prolonged and expensive RPAR process." Record at 660, 687. The record also contains testimony from Osmose's corporate counsel that there was nothing to prevent Osmose from implementing the proposal between 1982 and 1984. Record at 714.

Finally, Sipes argues that Osmose intentionally failed to clarify for consumers what chemicals it used to treat its wood. The evidence shows that Osmose's wood was originally treated with a salt formulation of chromium, copper, and arsenic and advertised as "salt-treated" wood. Later, Osmose began treating its wood with an oxide formulation of the same chemicals, and it advertised the wood as Osmose K–33 CCA treated wood. The record clearly shows that Osmose never clarified the chemical composition of its treatment by using the appropriate chemical symbols in advertising even after the EPA issued a position document in 1981 stating that "the agency believes that the majority of the population exposed to or using the pesticide-treated wood is not aware that the wood is treated with a pesticide." Record at 697.

Judgment on the evidence is proper only when there is no probative evidence or reasonable inferences which could support a judgment. Sipes presented probative evidence, though people could differ as to the result on the issue of punitive damages. Judgment on the evidence was therefore improper; the issue of punitive damages should have been presented to the jury.

The decision of the Court of Appeals is vacated. The trial court's grant of judgment on the evidence is reversed and the case is remanded to the trial court for a new trial on the issue of punitive damages.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.

---

**2.** Osmose objected to admitting this evidence at trial because Sipes had not been subjected to burning wood. It was finally admitted for purposes of impeachment. It should also have been admitted as evidence on the punitive damages count as probative of Osmose's state of mind.