Anita Jane BITZER, Administratrix of the Estate of Paul Daniel Bitzer, Deceased, Appellant–Cross–Appellee (Plaintiff–Counterdefendant Below),

v.

Andrew J. PRADZIAD, Appellee–Cross–Appellant (Defendant–Counterplaintiff Below),

and

the American Legion, A National Corporation, and the American Legion, Indiana Department, Appellee (Defendant Below).

No. 37A03–8909–CV–407.

Court of Appeals of Indiana, Third District.

May 23, 1991.

Steven W. Handlon, Handlon & Handlon, Portage, William F. Satterlee, III, Katharine E. Gerken, Heidi B. Jark, Valparaiso, for appellant-cross-appellee, Anita Jane Bitzer, Administratrix of the Estate of Paul Daniel Bitzer, Deceased.

Robert P. Harper, Harper & Rogers, Robert P. Stoner, Spangler, Jennings & Dougherty, P.C., Valparaiso, Robert J. Konopa, American Legion, Indiana Dept., South Bend, for appellees & appellee-cross-appellant.

GARRARD, Judge.

This wrongful death action arose out of an automobile collision. The defendants were the driver of the other car (Pradziad), the national corporation of the American Legion (the national legion) and the Indiana Department of the American Legion (the department).

The facts disclose that at about 10:30 p.m. on December 19, 1985 about a mile west of Kouts, Indiana, Pradziad's westbound auto collided with Bitzer's eastbound vehicle. Bitzer died of the injuries received in the collision.

On that date Pradziad was the first vice commander of the South Haven, Indiana legion post and was, also, the vice commander of the second district in the Indiana Department. He held no office in the department itself. For several hours prior to the collision Pradziad had been engaged in visiting legion posts in the area picking up membership cards and checks representing state and national dues payments. Accompanying him throughout the evening was Donald Hyser, who was also involved in membership activities for the district at that time.

Prior to trial a summary judgment was granted in favor of the national corporation, and no appeal has been taken from that ruling. Judgment on the evidence was granted in favor of the Indiana Department at the close of all the evidence. The jury returned a verdict for the plaintiff against the remaining defendant, Pradziad.

The estate appeals contending that it was error to grant judgment on the evidence in favor of the department. Pradziad cross appeals and claims error in the final jury instructions and in the admission of certain evidence.

I.

The estate urges that there was evidence introduced at trial from which the jury might have concluded that Pradziad was an agent of the Indiana Department and was acting within the scope of his authority at the time of the collision. It therefore argues that the liability of the department should have gone to the jury.

To assess this contention it is necessary to first review the evidence concerning the structure of the American Legion as an organization, and then Pradziad's position within the structure.

The American Legion was chartered by Congress as a national organization in 1919 and the Indiana Department was chartered by the national organization in 1920. Members of the Legion must have served on active duty in the military forces during World War 1, World War 2, the Korean war or the Vietnam war. There are approximately 50 departments under the national organization, one of them being Indiana. The Indiana Department serves eleven geographic districts within the state. Within each district are posts. There are 416 American Legion posts in Indiana.

The posts exercise considerable autonomy. They operate their own clubs, bars, restaurants, etc. They also direct the department to maintain programs such as the Legion newspaper, American Legion baseball, Boys' State, etc. Some state funds

are also used for VA hospitals and payments to disabled veterans.

Little control is exercised by the national over the departments except to obligate the departments to follow the constitution of the American Legion. Similarly, the departments exercise little control over the districts and posts except they have the authority to revoke a post's charter if fraudulent activities occur. The officers of a district are elected by delegates from the posts within the district. The department does not exercise control over these district officers.

Members' dues are fixed by the local posts. However, a portion of the collected dues are remitted to the department and the national. In 1985 the department received $4.50 and the national $5.50 from the dues paid by each member. The department uses the funds it thus receives to pay the costs of operating and administering the programs conducted by it.

Each year the national meets with the state commander to set membership targets. Reminders are then sent by the department to the individual posts concerning renewal of memberships and the districts and posts are given target dates by which they should attempt to meet a percentage of the annual goal. In this manner the posts, department and national avoid having to process nearly all the memberships in one short time frame. Memberships are accomplished at the post level but membership cards are printed at national headquarters and are furnished to the posts through the department.

Members pay the dues assessed by their post to that post. The post then remits to the department the portions due the department and national along with a retained portion of the membership card. About half the posts mail in the membership cards and checks representing dues payments. At the other posts dues checks and membership cards are periodically collected by someone from the district. This practice has been a tradition in the Legion.

Pradziad was a vice commander and involved with membership for the second district in 1985.[1] He held no office in the department. His duties included visits to the various posts to collect membership cards and checks drawn by post finance officers that were made out to the department. He was to deliver these to the district membership chairman. The department had nothing to do with Pradziad's selection as district vice commander and to Pradziad's knowledge, the department had no authority to remove him. The department did not pay him to collect the cards and dues; he was not reimbursed for expenses; and he was not furnished a vehicle or other equipment for the task. The department did not instruct him as to how to go about securing the cards and checks or control or direct him in accomplishing the task. Indeed, the department did not tell him of any consequences if the cards and dues were not picked up.

On December 19, 1985 Pradziad was going to collect cards and dues from some of the posts in the area. He had performed this function in prior years. After work he changed clothes and went to the South Haven post, arriving at 4:30 p.m. At the post he met Hyser, who was to accompany him that evening, and got the post's cards in order. Pradziad and Hyser then went to Kouts where they picked up a check from the finance officer and then went to the post to pick up the membership cards. From there they went to the posts in Knox and North Judson and finally to the Medaryville post where several district officers were present and they were to deliver the cards and checks to the district membership chairman. Each stop took from fifteen minutes to half an hour and at each post Pradziad and Hyser consumed some alcoholic beverage. Between 10:00 and 10:30 p.m. Pradziad and Hyser left to return to South Haven and the collision occurred shortly thereafter.

In reviewing a grant of judgment on the evidence we consider the record from the

---

1. There is some confusion in the record as to precisely who was in charge of membership in the district in 1985, but it is clear that both Pradziad and Hyser were involved in collecting cards and dues.

perspective of the evidence and reasonable inferences favorable to the nonmoving party. Judgment is properly entered where there is no evidence or reasonable inference which would support finding the existence of an essential element of the claim. *Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223, *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205.

■ The estate contends that there was evidence from which the jury could have determined that Pradziad was acting as an agent for the department in picking up the membership cards and dues payments and therefore the question of the department's liability should have been submitted to the jury.

The argument has a critical flaw which was succinctly stated by the writer in 3 Am.Jur.2d, *Agency*, § 280, p. 783:

> The general rule that a principal is liable for the torts of his agent is not grounded on agency principles.... [T]he tort liability is based on the employer and employee, rather than any agency, principle; the liability for the tortious act of the employee is grounded upon the maxim of 'respondeat superior' and is to be determined by considering, from a factual standpoint, the question whether the tortious act was done while the employee, whether agent or servant, was acting within the scope of his employment.

This is the accepted view in Indiana. *Estate of Mathes v. Ireland* (1981), Ind.App., 419 N.E.2d 782; *Bryan v. Pommert* (1941), 110 Ind.App. 61, 37 N.E.2d 720.

The reason for this is that in our system of tort liability based upon fault, it is the right of the party sought to be held liable [2] to control the conduct of the person who actually caused the injury that creates the necessary nexus. Thus, our decisions have focused upon the necessity of the party sought to be held liable having the right or power to control the other's conduct, whether or not the power is exercised. *See, e.g., Swanson v. Wabash College* (1987), Ind.App., 504 N.E.2d 327; *Trinity*

*Lutheran Church, Inc. v. Miller* (1983), Ind.App., 451 N.E.2d 1099; *Hale v. Peabody Coal Co.* (1976), 168 Ind.App. 336, 343 N.E.2d 316; *Standard Oil Co. v. Soderling* (1942), 112 Ind.App. 437, 42 N.E.2d 373.

In the case at bar there was a total absence of any evidence that the Indiana Department of the American Legion had any right or power to control the conduct of Pradziad or that it ever attempted to do so. It follows that judgment on the evidence was properly granted in favor of the department, regardless of whether Pradziad might be deemed an agent of the department with respect to picking up membership cards and checks representing the department's and the national's portion of dues payments.

## II.

We turn now to the cross appeal. There were no eyewitness accounts of how the collision occurred that night. Bitzer was killed and neither Pradziad nor Hyser had any memory of what happened just before the collision. Both sides employed accident reconstruction experts and the one called by the estate testified to the opinion that Pradziad crossed the center line and the collision occurred in Bitzer's lane of traffic.

At 11:50 p.m. a blood alcohol test was taken on Pradziad at Porter Memorial Hospital. His serum alcohol level was reported as .1082 percent. At trial a pathologist testified that when the serum alcohol level was converted to a percentage of alcohol in whole blood, the result would be a blood alcohol level of .089 percent.

The court gave the jury a total of 45 final instructions. Six of these relate to intoxication and Pradziad complains that there was no evidence to support giving instruction No. 20 and that instructions numbered 20, 21 and 22 unduly emphasized the intoxication issue in view of instructions numbered 23 and 25 given by the

---

2. We avoid using the terms principal, master, employer and their counterparts in an effort to

avoid the confusion which may attend the use of those labels.

court.[3]

◼ The six instructions covered different aspects of the intoxication issue. All were brief and taken together they explained to the jury the relationship of blood alcohol levels to intoxication and the role of intoxication in a finding of negligence. We cannot say they were repetitive or unduly emphasized this aspect of the case.

◼ Instruction No. 20 recited the pertinent statutory provisions making it a misdemeanor to operate a vehicle with more than .10% blood alcohol and a misdemeanor to operate a vehicle while intoxicated. It instructed the jury that if they found by a preponderance of the evidence that Pradziad has violated these statutes without excuse or justification, such conduct might constitute negligence.

Pradziad objected that there was no evidence to support the giving of the instruction. His argument amplifies his objection by asserting that the evidence was uncontradicted that within the meaning of the statute his blood alcohol level when tested was only .089, and that in the opinion of his expert it would have been somewhat lower when the collision occurred.

Assuming that the court should have deleted the portion of the instruction describing the .10 offense, the error was harmless. If the jury followed the instruction they would have necessarily determined that Pradziad did not violate the statute. Moreover, when the instruction is considered in context with the other instructions, that aspect of it does not appear to have any tendency to mislead the jury. Pradziad has failed to demonstrate reversible error.

◼ He next contends it was error to refuse his tendered instruction No. 3 which would have told the jury that the unexplained failure of the plaintiff to produce a witness within its control may give rise to the inference that the witness would have testified unfavorably to the plaintiff.

Pradziad requested the instruction because it appeared that the estate had consulted two experts on accident reconstruction but called only one to testify at trial.

Refusing the instruction was not reversible error. The court is invested with discretion in determining the final instructions to be given to the jury. *Wielgus v. Lopez* (1988), Ind.App., 525 N.E.2d 1272. Our prior decisions have disapproved the giving of such "missing witness" instructions unless clearly required by the evidence. *Rohrkaste v. City of Terre Haute* (1984), Ind.App., 470 N.E.2d 738, 743; *Chrysler Corporation v. Alumbaugh* (1976), 168 Ind.App. 363, 342 N.E.2d 908. We find it unrealistic to impose on litigants the necessity of calling as witnesses every expert whom they may have consulted at some stage of the proceedings or suffer a missing witness instruction when the case goes to trial. Cost considerations alone will often limit the availability of experts at trial, and a party might well consult a "back-up" to insure the availability of live testimony for the jury as a matter of strategy or technique. Under the circumstances present here, we find no error in rejecting the instruction. Furthermore, despite the provisions of Trial Rule 26(B)(4), the parties before us agree that Pradziad knew the identity of the uncalled expert a year before trial and could have deposed him had he chosen to do so. The witness was therefore available to either party. *See Rohrkaste, supra.*

◼ Finally, Pradziad contends the court erred in admitting testimony of witnesses Haag and Flowers over his objection that it was irrelevant.[4] Haag and Flowers testified that they, too, were driving eastbound on State Road 8 that night. They passed Bitzer who was driving slower than they and whom they recognized. About seven or eight miles on they were forced off the road by an approaching westbound car that drifted over into their lane. They described it as an older model full size car,

---

3. Pradziad's brief attempts to extend his objections beyond those voiced at trial. We limit our consideration to the two objections made then. Any other contentions have been waived.

4. Pradziad had also sought to prevent the testimony by a motion *in limine.* On appeal he correctly recognizes that the ruling on the motion does not present an appealable issue. *See Akins v. State* (1981), Ind., 429 N.E.2d 232.

dark in color and possibly a Buick, Chevrolet or Ford. Neither one testified that this was Pradziad's car, although his car was, in fact, a 1979 burgundy colored Chevrolet Caprice.

Trial courts are invested with discretion in admitting or rejecting evidence over an objection to its relevance. *State v. Hall* (1982), Ind., 432 N.E.2d 679. Evidence may be relevant, even though its ability to persuade is extremely light. *Data Processing Services, Inc. v. L.H. Smith Oil Corp.* (1986), Ind.App., 492 N.E.2d 314, 321.

We find the evidence was marginally relevant although it involved conduct prior to the collision and the offending vehicle was not identified as the one belonging to Pradziad. Nevertheless, the occurrence testified to was closely related to the collision in both time and distance and the description of the vehicle fit Pradziad's car. *See Hooten v. DeJarnatt* (1964), 237 Ark. 792, 376 S.W.2d 272; *Boyd v. Midland Co-Ops, Inc.* (Okla.1961), 364 P.2d 670; *Faulk v. McPherson* (1943), 27 Tenn.App. 506, 182 S.W.2d 130. The court did not abuse its discretion in admitting the testimony.

Pradziad contends, however, that his subsequent cross examination demonstrated that the vehicle described by Haag and Flowers could not have been his because of the timing involved. That cross examination was, of course, valuable to the jury in determining the weight to be given the testimony of Haag and Flowers. However, if Pradziad believed the answers on cross examination rendered the testimony wholly inadmissible, he was obliged to then move to strike the evidence. *State v. Sovich* (1969), 253 Ind. 224, 252 N.E.2d 582. His failure to do so waives the issue on appeal. *See Redslob v. Redslob* (1982), Ind. App., 433 N.E.2d 819.

The judgment is affirmed.

HOFFMAN, P.J., and ROBERTSON, J., concur.