Barbara J. VAN BREE, Frank E. Van Bree, and Jeanne Van Bree, Appellants (Plaintiffs Below),

v.

HARRISON COUNTY, Indiana, Harrison County Board of Commissioners, Harrison County Highway Department, and Donald W. Lincoln, Appellees (Defendants Below).

No. 88A04–9007–CV–352.

Court of Appeals of Indiana, Fourth District.

Jan. 30, 1992.

H. Lloyd Whitis, Corydon, for appellants.

Ernest W. Smith, Smith, Bartlett, Heeke & Carpenter, Jeffersonville, Richard T. Mullineaux, Kightlinger & Gray, New Albany, for appellees.

MILLER, Judge.

On a wintry, icy afternoon, seventeen year-old Barbara Van Bree's car was rounding a curve on a county road when it slammed almost head-on into a Harrison County dump truck. Barbara claimed that Donald Lincoln, the driver of the truck, was driving in the middle of the road and, when she attempted to avoid a collision, the car slid on some ice and she lost control. Along with her parents, Barbara sued Harrison County, the County Board of Commissioners, the County Highway Department, and Lincoln, a County employee (collectively referred to as "County")[1] At the jury trial, after Van Bree's presentation of evidence, the judge eliminated Van Bree's claims that the County negligently main-

tained the road by not removing snow, ice and over-grown vegetation and that Lincoln's conduct was willful, wanton and reckless. The jury rejected Van Bree's remaining claim that Lincoln was negligent in his operation of the truck. On appeal, she claims the trial court erred by 1) removing her claims that the County negligently maintained the road and that Lincoln's conduct was willful, wanton, and reckless from the jury; 2) correcting an instruction on sudden emergency before the jury retired; and 3) permitting the County to cross-examine a witness about Van Bree's driving ability after the accident.

We affirm.

## DISCUSSION AND DECISION

### I. Judgment on the Evidence

 The trial court granted County's motion for judgment on the evidence on several claims raised by Van Bree. Judgment on the evidence is proper only when there is neither evidence nor reasonable inferences to be drawn therefrom in favor of the nonmovant—in this case, Van Bree. *Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223. In reviewing the trial court's ruling on the County's motion, we consider only the evidence and reasonable inferences most favorable to Van Bree. *Id.* We will affirm the trial court's grant of the motion only if the evidence is without conflict and supports only one inference in favor of the County. *Id.* If there is any probative evidence or reasonable inference to be drawn from the evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

### A. County's Negligence:

The trial court determined that the County was immune from liability for failing to remove snow and ice from the road pursuant to Ind.Code 34-4-16.5-3, which provides in part:

---

1. Van Bree also sued Bryan Glenn, a passenger in the truck at the time of the accident. How-
ever, Van Bree dismissed her case against Glenn after presenting her case-in-chief.

"A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

\* \* \* \* \* \*

(3) the temporary condition of a public thoroughfare which results from weather"

Van Bree argues she presented evidence that ice had been on the road for four or five days; therefore, the condition of the road could not be considered temporary as a matter of law. The County argues that the accumulation of ice and snow was temporary.

■ Van Bree's argument forces us to examine the meaning of the word temporary as used in I.C. 34–4–16.5–3. We must construe the statute according to its plain meaning, and words and phrases shall be taken in their plain, ordinary and usual sense unless a different purpose is manifested by the statute itself. *Wayne Township of Allen County v. Hunnicutt* (1990), Ind.App., 549 N.E.2d 1051.

"Temporary" has been defined by our supreme court in another context as "the opposite of permanent." *State v. Curtis* (1961), 241 Ind. 507, 173 N.E.2d 652. It has also been defined as "lasting for a time only: existing or continuing for a limited time", Webster's International Dictionary, 2353 (3rd ed. 1976), and "[t]hat which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration." Black's Law Dictionary, 1312 (5th ed. 1979). Thus, anything not "permanent" would, by definition, be temporary.

■ However, we agree with Van Bree's assertion that the definition of "temporary" is not so broad so as to include everything that is "not permanent". In *Walton v. Ramp* (1980), Ind.App., 407 N.E.2d 1189, we held that I.C. 34–4–16.5–3 is a codification of a governmental entity's common law duty to exercise reasonable care and diligence to keep its streets and sidewalks in a reasonably safe condition for travel. Under the common law, a governmental entity is not generally liable for injuries caused by defects in sidewalks and streets due to natural accumulation of snow and ice. *Id.; City of South Bend v. Fink* (1966), 139 Ind.App. 282, 219 N.E.2d 441. However, a city could be held liable under the common law for failure to remove snow and ice if it could be shown that the snow and ice were an obstruction to travel and that the city had an opportunity to remove the snow and ice. *Ewald v. City of South Bend* (1938), 104 Ind.App. 679, 12 N.E.2d 995. Reflecting these common law principles, I.C. 34–4–16.5–3(3) provides immunity for temporary conditions caused by the weather, but does not provide for immunity when the condition is permanent or not caused by the weather.

■ In *Ewald*, a case decided under common law principles, we examined the municipality's duties with regard to accumulations of snow and ice. Ewald was injured when a bus in which she was riding was hit by a car driven by Donald Jarvis. She sued the city, claiming that Jarvis lost control of his car when it slid on ice the city had negligently allowed to accumulate and remain on the street. The trial court dismissed the complaint and this court affirmed. We stated:

"It has been established by a long line of authorities that a municipal corporation is bound to exercise reasonable care and diligence to keep its streets in a reasonably safe condition. The municipality is liable if, in view of all the circumstances including, among others, climatic conditions, there has been a failure to exercise reasonable care and diligence. (citations omitted).

"The city is not liable for the fall of snow, rain, or sleet or the consequent thawing and freezing and so far as we are advised is under no duty to remove all of the snow and ice. A city *may become liable if it be shown that the streets have become defective and unsafe by reason of the fact that snow and ice have become an obstruction to travel and the city has had time and opportunity to remove it. City of Linton v. Jones* (1921), 75 Ind.App. 320, 130 N.E. 541."

*Id.* at 996–97 (emphasis supplied). Although *Ewald* was decided before I.C. 34–4–16.5–3, we find the same reasoning to be applicable here. Thus, the duty was on Van Bree to present evidence that the road had become defective because of the snow and ice and that the county had time and opportunity to remove it.

█ The evidence most favorable to Van Bree is that her accident occurred on Friday, January 13, 1984. The road had been icy "since earlier in the week", and Friday was the first day a County truck had been out to treat it. The highway department had received complaints about the condition of the road; therefore, the jury could have reasonably inferred the County knew there was ice on Whiskey Run Road. Further, the jury could reasonably have inferred that the road had become defective or unsafe from the testimony of those living on Whiskey Run Road who stated that the road was too slick to travel. There is no evidence, however, from which a jury could infer that the County had an opportunity to treat the road before Friday. In fact, Edward Deatrick, the supervisor at the Highway Department testified that the Department was responsible for over a thousand miles of county roads and that the crews had been out all week spreading salt and gravel on the roads.

Van Bree also argues that the County could not be immune from liability under I.C. 34–4–16.5–3 because accumulation of ice on the road was caused not solely by the weather, but was caused in part by the overhead vegetation which shaded this part of the road. She argues the overhead vegetation was a recurring danger resulting from more than just weather. She cites *Walton, supra,* in support of her argument. Walton was injured when his car slid on some ice on a county road. The trial court granted summary judgment for the county, finding it was immune under I.C. 34–4–16.5–3, even though there was evidence that adjacent landowners allowed water to spill off their property onto the road and the water would freeze when the temperature dropped. We reversed, holding that, at minimum, whether the disposing of water by an adjacent landowner is a recurring danger resulting from more than just the weather was a question for the factfinder to resolve.

Van Bree argues the circumstances here are similar to those presented in *Walton.* In *Walton,* the evidence showed that the ice resulted from water spilling on to the road and not by natural accumulations of rain or snow. Here, however, there is no evidence that the ice was caused by anything other than natural accumulation of snow.

### B. Lincoln's Conduct

█ Van Bree argues the jury should have been permitted to determine whether Lincoln's conduct was willful or wanton and the trial court erred in removing this issue from the jury. The cases cited by Van Bree in support of her argument all involve the motor vehicle guest statute, Ind.Code 9–3–3–1, which requires a guest in a motor vehicle to prove that the operator's behavior was willful or wanton before the guest may recover for injuries caused by the operator. Here, Van Bree was clearly not the County's guest—she was driving her own vehicle. Further, to recover for her injuries in this case, Van Bree would only have to show Lincoln acted negligently. She fails to demonstrate to us how she was prejudiced by the trial court's ruling and error, if any, is harmless and not a basis for reversal.

### II. "Sudden Emergency" Instruction

Van Bree argues the trial court erred in revising her sudden emergency instruction after she had given her final argument to the jury. Before final arguments, both parties tendered their final instructions to the judge and requested the court inform them how the jury would be instructed, pursuant to Ind.Trial Rule 51(C), which provides as follows:

> "At the close of the evidence and before argument each party may file written requests that the court instruct the jury on the law as set forth in the requests. *The court shall inform counsel of its proposed action upon the request prior*

*to their arguments to the jury, but the court shall instruct the jury after the arguments are complete.* No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. The court shall note all instructions given, refused or tendered, and all written objections submitted thereto, shall be filed in open court and become a part of the record. Objections made orally shall be taken by the reporter and thereby shall become a part of the record." (emphasis supplied).

Before closing arguments, the court modified Van Bree's tendered sudden emergency instruction and informed counsel the jury would be instructed on this issue as follows:

"If you find that the Plaintiff, Barbara J. Van Bree, was, at the time of the occurrence, confronted with a sudden emergency not of her own making, you should not find her to have been negligent merely because she failed to adopt what subsequently, and upon reflection, may prove to have been a better way of extricating herself from a situation of imminent peril. *All that is required is an honest exercise of judgment, even if it was not the best judgment under the circumstances.*"

The County did not object to this instruction before closing arguments. However, County did object when Van Bree's counsel stated during his final argument that all the law required with respect to sudden emergency is that Van Bree "honestly exercise her judgment even if it's not the best judgment under the circumstances ...". The court sustained the County's objection, and agreed with the County that the sudden emergency instruction should be modified as follows:

"You are instructed that when a person is confronted with a sudden emergency not of his/her own making without sufficient time to determine with certainty the best course to pursue, he/she is not held

to the same accuracy of judgment as would be required of him/her if he/she had time for deliberation. Accordingly, if he/she exercises such care as an ordinarily prudent person would exercise when confronted by a like emergency, he/she is not negligent even though another course of conduct would have been more judicious or safer, or might have even avoided the incident."

Van Bree objected to the giving of this instruction at trial.

On appeal, Van Bree argues that the first modified instruction was a correct statement of the law and that, under T.R. 51(C), the judge was bound to give that instruction. County argues the court's first instruction was a misstatement of the law.

▬▬▬ The court's first instruction was an incorrect statement of the law. It is true that the last sentence of the court's first instruction contained language very similar to that found in *Indiana Consolidated Insurance Co. v. Mathew* (1980), Ind.App., 402 N.E.2d 1000. However, the mere fact this court employs certain language in reaching its conclusion in a particular case does not necessarily make that language appropriate for a jury instruction. *Mansfield v. Shippers Dispatch, Inc.* (1980), Ind.App., 399 N.E.2d 423. In *dicta*, the *Mathew* court stated that "one who is confronted with a sudden emergency not of his own making is not chargeable with negligence if he acts according to his best judgment." *Id.* at 1003. However, the court went on to explain the sudden emergency doctrine as follows: "The sudden emergency doctrine requires the person so confronted to do that which an *ordinary prudent man would do under like circumstances.*" *Id.* Therefore, the court properly modified its instruction on sudden emergency.

▬▬ We also reject Van Bree's argument that T.R. 51(C) required the court to give its first instruction, even though the County had objected to it before the jury retired. There is nothing in this rule which prohibits the judge from modifying jury

instructions after final arguments. In fact, the rule clearly states that the judge "shall inform counsel of its *proposed* action ...". Further, in the very next sentence, the rule states that "[n]o party may claim as error the giving of an instruction unless he objects thereto *before the jury retires to consider its verdict*. While the judge may inform counsel of the instructions he proposes to give, objections thereto may be made until the jury retires; thus allowing the judge an opportunity to make necessary corrections. *See* 3 W. HARVEY, INDIANA PRACTICE at 366 (1988). There would be no reason for requiring the objection to be made to the trial court if the judge could not make the necessary changes before the jury retires.

### III. Evidence of Van Bree's Driving

Van Bree argues the trial court erred in permitting the County to cross-examine Kathleen Krider (a passenger in Van Bree's car at the time of the accident) about Van Bree's driving ability both before and after the January 13, 1984, accident. On direct examination, Van Bree's counsel asked Krider if she knew what kind of a driver Van Bree was. Krider responded Van Bree was "a careful and safe driver." (R. 229). On cross examination, the trial judge permitted the County to question Krider, over objection, about Van Bree's driving. Van Bree argues that the scope of direct examination was limited to Van Bree's driving *before* the accident, and the trial court erred in permitting the County to go beyond the scope of the direct examination and question Krider about Van Bree's driving *after* the accident.

Van Bree's counsel asked Krider if she had ever ridden with Van Bree before January 1, 1984, to which Krider responded yes. Later in his questioning, Van Bree's counsel asked Krider:

Q. What kind of driver was Barbara?

A. She was a careful and safe driver.

(R. 229). County cross-examined Krider as follows:

Q. Now, with regard to that opinion that you just stated about Miss Van-Bree's driving ...

A. Yes.

Q. When you gave that opinion, were you aware that in addition to the January 1984 accident, she was involved in an accident, a motor vehicle accident in the fall of 1983?

A. No.

Q. When you gave that opinion about her being a safe and careful driver, were you aware that in addition to those two accidents, she was involved in an accident, a motor vehicle accident in January of 1985?

A. Yeah, I know about that one.

Q. Okay. And when you gave that opinion about her being a safe and careful driver, in addition to the January '84 accident, the fall of '83 accident and the January '85 accident, were you also aware that she was involved in a motor vehicle accident in August of 1985?

A. No.

Q. So those weren't considered when you expressed that opinion because you didn't know about them?

A. Well, the one I did.

Q. Right. The other two.

A. No, I didn't know about them.

We find nothing in Van Bree's questioning of Krider that specifically limited Krider's opinion on Van Bree's driving to the period before the 1984 accident. It is true that Van Bree asked Krider if she had ever ridden with Van Bree before January 1, 1984; however, no such time limit was put on Krider's opinion as to Van Bree's driving ability.

We are aware that evidence of prior or subsequent negligent acts is generally not admissible to show the defendant was negligent in a particular incident unless the proponent of the evidence lays a foundation of similar circumstances between the incidents. *See, e.g., Craven v. Niagara Machine and Tool Works, Inc.* (1981), Ind.App., 417 N.E.2d 1165; *Peaches v. City of Evansville* (1979), Ind.App., 389 N.E.2d 322. Here, no such foundation was presented; however, the evidence was not admitted to show Van Bree was negligent

in this accident. Rather, it was admitted for the limited purpose of impeaching Krider's testimony that Van Bree was a safe and careful driver and the jury was so instructed as follows:

"Now, members of the jury, I want to give a cautionary instruction at this time. I have allowed this evidence because there's been testimony that the plaintiff in this case was a careful and safe driver, that is this witness has been allowed to express her opinion on that issue. But generally the law provides that whether a person is a safe and careful driver in general is not admissible generally, not admissible on the question of whether or not they were a safe and careful driver or negligent or non-negligent at the time of the accident. That's for you to determine in this case. And I have allowed this testimony solely for the purpose of your evaluating the opinion of this witness and her credibility. And it is not to be considered by you in any fashion in determining, that is her opinion is not, whether or not she was safe and careful, the plaintiff was a safe and careful driver at the time of the accident."

(R. 265).

 On appeal, we assume the jury obeyed the trial court's instruction in reaching its verdict. *Webster v. State* (1980), 274 Ind. 668, 413 N.E.2d 898. The court's instruction made it clear to the jury that it was not to consider Krider's testimony in determining Van Bree's negligence in this particular accident. Thus, we find no error.

The decision of the trial court is affirmed.

CHEZEM and CONOVER, JJ., concur.