**Gregory DZIERBA and Tammy Cuma,
Appellants–Plaintiffs,**

**v.**

**CITY OF MICHIGAN CITY,
Appellee–Defendant.**

No. 46A03–0301–CV–34.

Court of Appeals of Indiana.

Nov. 10, 2003.

Martin W. Kus, Newby, Lewis, Kaminski & Jones, LLP, La Porte, IN, Attorney for Appellants.

Stacy J. Vasilak, Bruce P. Clark & Associates, Munster, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Twelve-year-old Kyle Cuma was swept into Lake Michigan and drowned while attending Michigan City's Oktoberfest festival. His parents, Gregory Dzierba and Tammy Cuma (the Appellants), filed a wrongful death lawsuit against Michigan City (the City), among others. Michigan City filed a motion for summary judgment

on the ground that it owed no duty to Kyle. The Appellants appeal from the granting of the City's motion for summary judgment, presenting several issues for review. We consolidate and restate those issues as follows:

1. Did the City owe a duty to Kyle Cuma, the breach of which caused his death?

2. Was the City immune from liability pursuant to the Indiana Tort Claims Act?

We affirm.

The facts favorable to the Appellants, the nonmoving parties, are as follows. The City owns Washington Park, a recreational park located on the shores of Lake Michigan. Attractions in the park include a picnic area, a marina, and a beach. The City also owns land extending immediately west from the park, upon which is located a federal navigational structure known as the East Pier. The East Pier juts out into Lake Michigan and is approximately 1146 feet long. A lighthouse is located at the end of the East Pier. A concrete walkway was built on the top concrete tier of the East Pier. A person may access the walkway via a beachfront sidewalk located in Washington Park. One can then walk from the shore to the lighthouse using the walkway, which appears to be between ten and fifteen feet wide. Although the City owns all of the land upon which these structures were built, the East Pier is owned and maintained by the United States Corps of Engineers and the lighthouse is owned and operated by the United States Coast Guard.

At approximately 5:30 p.m. on September 4, 2000, Kyle was at Washington Park. The weather was stormy at the time. Kyle rode his bicycle along the walkway out to the lighthouse. Once there, he dismounted from his bicycle and stood near the lighthouse. As he stood there watching the waves break against the pier, a large wave broke over the walkway and washed him into the lake. He struggled to stay afloat but was unable to do so. Tragically, he drowned.

On November 29, 2001, the Appellants filed a wrongful death complaint for damages against the City under the Indiana Tort Claims Act. In it, the Appellants alleged that the City had been negligent in the following respects: 1) Failing to warn Kyle of the potentially dangerous conditions (high wind and water) on the pier; 2) failing to provide safety measures to prevent members of the public from being swept into the water; 3) failing to place gates at the entrance to the pier to prevent access to the pier when the weather was rough; 4) failing to place lifeguards on duty at the entrance to the pier in order to assist anyone who fell into the lake; 5) failing to provide railings, grips, guide ropes, or safety stations that Kyle could have held onto to prevent being swept into the lake; and 6) failing to provide flotation devices or rescue devices of any kind to help those who fell into the lake. On September 19, 2002, the City filed a motion for summary judgment on the grounds that it did not own or control the pier in question, and therefore did not have a duty to inspect. The City also argued that it was immune from liability pursuant to the Indiana Tort Claims Act (the ITCA). On December 20, 2002, the court granted the City's summary judgment motion upon its conclusion that "there is no duty on the part of the defendant to the plaintiffs." *Appellants' Appendix* at 3. The court did not address the issue of immunity.

We review a grant or denial of a summary judgment motion applying the same standard as the trial court. That is, we determine whether there is a genuine issue of material fact and whether the moving

party is entitled to judgment as a matter of law. *Catt v. Board of Com'rs of Knox County,* 779 N.E.2d 1 (Ind.2002). "Summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 3. When conducting such a review, we construe all facts and draw all reasonable inferences from those facts in favor of the nonmoving party. *Id.*

### 1.

We begin our analysis with the basis upon which the trial court granted the City's summary judgment motion, i.e., duty. The existence of a duty is a question of law for the court to decide. *Mangold v. Indiana Dep't of Nat'l Res.,* 756 N.E.2d 970 (Ind.2001). In a negligence case, summary judgment is particularly appropriate when the court determines that there is no duty because, absent a duty, there can be no breach and, therefore, no negligence. *Reed v. Beachy Const. Corp.,* 781 N.E.2d 1145 (Ind.Ct.App. 2002). In the instant case, the question of whether the City had a duty to Kyle turns on the issue of possession and control of the East Pier. We have stated in this regard,

> only the party who controls the land can remedy the hazardous conditions which exist upon it and only the party who controls the land has the right to prevent others from coming onto it. Thus, the party in control of the land has the exclusive ability to prevent injury from occurring.

*Reed v. Beachy Const. Corp.,* 781 N.E.2d at 1149 (quoting *Harris v. Traini,* 759 N.E.2d 215, 225 (Ind.Ct.App.2001), *trans. denied*) (citations omitted), *trans. denied.*

It is undisputed that the City does not own the pier or the lighthouse. Further, the U.S. Army Corps of Engineers built, owns, and is responsible for maintaining the East Pier, and the U.S. Coast Guard owns and operates the lighthouse. Except for one exception, the Appellants designated no materials tending to show that either the Army Corps of Engineers or the Coast Guard delegated or in any other way assigned to the City the ownership of those structures or the responsibilities associated with operating or maintaining them.

The lone exception concerns a structure known as the catwalk. The catwalk is a walkway running approximately twenty feet above the East Pier, from the shore to the lighthouse. The structure was deeded to the City after a campaign on the City's part to preserve it as a local landmark. It appears that the City's ownership of the catwalk is largely symbolic. In any event, the public is not granted access to the catwalk, and Kyle was swept from the walkway, not the catwalk. Thus, the catwalk is not relevant in these proceedings.

The Appellants acknowledge these facts, but argue that a duty nevertheless arose by virtue of the fact that the City owned the sidewalk that ran along the beach and led to the East Pier, and because the East Pier is a recognized landmark of the City and is depicted in some civic promotional materials. Initially, we disagree with the Appellants' assertion that the presence of the sidewalk was tantamount to the City encouraging the public to visit the lighthouse. There is little information in the record about the sidewalk, other than it runs along the beach to the lighthouse. There is no evidence, for instance, that identifies the party that installed the sidewalk or the party that is responsible for maintaining it. In any event, even assuming that the City is the responsible party in those regards, we are not inclined to premise liability on such a slender thread as the mere presence of the sidewalk along

the beach. We note in this regard that the sidewalk provides access to the East Pier and the lighthouse for authorized personnel who work on and around those structures. Thus, it cannot be said that the sidewalk's only, and perhaps even primary, function is to provide the public a means of accessing the pier. The City accurately points out that if this argument succeeds, then any person whose sidewalk leads to a park or other structure would be liable for any injuries that occur thereon. Such paints with too broad a brush.

Finally, we note the Appellants' argument that the City depicts the pier and the lighthouse in civic promotional material, which constitutes an implicit invitation to visit the lighthouse. The materials in question include those that are generated by the following groups: The LaPorte County Convention & Visitors Bureau, the Michigan City Area Chamber of Commerce, the Michigan City Area Schools, and the Michigan City Public Library. None of those groups are agencies or departments of the City, and the City does not in any way operate, control, organize, or manage any of those groups. Thus, it cannot be said that materials distributed by those groups in any way represent a communication on the part of the City.

In summary, the City owed no duty to Kyle concerning the condition of the East Pier and the lighthouse because it did not own, operate, or manage those structures. The trial court did not err in reaching that conclusion.

### 2.

Even assuming the City owed a duty to members of the public with respect to the condition of the walkway, it is immune from liability in view of the facts of this case. As an initial matter, for purposes of this discussion only, we will assume that there exists an ownership nexus between the City and the walkway so as to remove that impediment to a finding of duty and liability on the City's part.

In *Campbell v. State,* 259 Ind. 55, 284 N.E.2d 733 (1972), our supreme court held that all governmental units are bound, both directly and under a theory of respondeat superior, by the common-law duty to use ordinary and reasonable care under the circumstances, with limited exception. Those exceptions included such claims as failure to prevent crime, appointment of an incompetent official, or an incorrect judicial decision. Subsequent decisions, however, took that concept of a general duty with limited exceptions and transformed it into the bifurcated concepts of "private duty" and "public duty." As our supreme court later observed, such resulted in "highly abstract, almost metaphysical debates over whether the duty alleged to have been breached was a 'private' one or a 'public' one." *Benton v. City of Oakland City,* 721 N.E.2d 224, 230 (Ind.1999). In *Benton,* the court reaffirmed and clarified its holding in *Campbell,* stating:

We hold that *Campbell* is properly applied by presuming that a governmental unit is bound by the same duty of care as a non-governmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions (prevent crime, appoint competent officials, or make correct judicial decisions) that it should be treated as one as well. We refuse to articulate a one-size-fits-all test for determining when a duty is so closely akin to one of the limited exceptions that it should be treated as one as well. As we have seen, the "governmental function-proprietary function" test did not work. Neither has the public duty-private duty test. The best we can say as a general proposition is that because the duty of care is so pervasive, any additional ex-

ceptions will be rare and identified on a case-by-case basis.

*Id.* (footnote omitted).

The City claims that *Benton* is inapposite because the court explicitly noted there that the trial court in that case did not decide whether the State was immune and therefore the issue was not before the Supreme Court. Although it is true that *Benton* was not decided on grounds of governmental immunity, such does not mean that we are free to ignore the court's thorough discussion of the parameters of that doctrine. The fact that the discussion of governmental immunity in *Benton* was a component of the analysis of duty—the issue upon which that case ultimately hinged—does not relegate it to the category of meaningless dicta. Quite the opposite is true, in fact. It provided a yardstick by which to measure claims of immunity such as might apply in the instant case.

The theories of negligence asserted against the City in the Appellants' complaint do not include any of the three exceptions to the general rule of liability (i.e., to prevent crime, appoint competent officials, or make correct judicial decisions), nor does it identify acts "closely akin" to one of those exceptions. *See Benton*, 721 N.E.2d at 230. Therefore, the City is not immune under the Indiana common law. We note, however, that the *Benton* court clarified that the discussion of governmental immunity in that case addressed that subject only in the context of Indiana common law. "It [did] not relax any of the extensive protections from tort liability afforded Indiana governmental units by statute." *Id.* at 231–32. Thus, we must examine whether the City is immune from liability under the ITCA.

■ The ITCA "allows suits against governmental entities for torts committed by their employees but grants immunity under the specific circumstances enumerated in Indiana Code section 34–13–3–3." *Catt v. Board of Com'rs of Knox County*, 779 N.E.2d at 3 (quoting *Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 975 (Ind.2001)). Courts decide as a matter of law whether the ITCA confers immunity in a particular circumstance. *Catt v. Board of Com'rs of Knox County*, 779 N.E.2d 1. The party seeking immunity bears the burden of establishing it. *Id.*

■ Citing *Garner v. City of Michigan City*, 453 F.Supp. 33 (N.D.Ind.1978), the City contends that, pursuant to the ITCA, it is immune from liability for Kyle's death because of Ind.Code Ann. § 34–13–3–3(3) (West, PREMISE through 2002 1st Special Sess.), which provides in pertinent part: "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: (1) The natural condition of unimproved property." The City contends that *Garner* is instructive because there, as here, the action was based upon a drowning death that occurred in the waters of Lake Michigan off of the Michigan City shoreline. In that case, the court held that, under I.C. § 34–13–3–3(1), the City of Michigan City was immune from liability for the drowning death. We note however, that the theory of liability in *Garner* was based strictly upon failure to inspect and discover a dangerous condition, and failure to warn and post lifeguards. Clearly, in *Garner*, the natural condition of the waters of Lake Michigan was the "condition" referred to in I.C. § 34–13–3–3(1). There were no improvements of that condition mentioned, inferred, or implicated in the complaint in that case. Thus, the complaint sought damages for injuries caused by the natural condition of unimproved property, which was the lake. The same cannot be said in the instant case.

Here, the allegations in the Appellants' complaint do not focus on the condition of the waters of the lake, but instead on the condition of the walkway. Clearly, the walkway constitutes an "improvement" to the property (i.e., the subject lake and shoreline) within the meaning of I.C. § 34–13–3–3(1). Therefore, I.C. § 34–13–3–3(1) and *Garner* do not apply in the instant case. We conclude, however, that another subsection in the ITCA does apply.

In Indiana, it is well settled that a governmental entity has a common law duty to exercise reasonable care and diligence to keep its streets and sidewalks in a reasonably safe condition for travel. *See Catt v. Board of Com'rs of Knox County,* 779 N.E.2d 1. I.C. § 34–13–3–3(3) provides, however, that a governmental entity is not liable for a loss caused by "[t]he temporary condition of a public thoroughfare or extreme sport area that results from weather." This provision has been applied most often in cases involving the removal of snow and ice from roadways and sidewalks. *See, e.g., Van Bree v. Harrison County,* 584 N.E.2d 1114 (Ind.Ct. App.1992), *trans. denied; Walton v. Ramp,* 407 N.E.2d 1189 (Ind.Ct.App.1980).

The walkway leading to the lighthouse on the East Pier may fairly be classified as a "public thoroughfare" within the meaning of the ITCA. Although no case has yet so held, there are several examples where the statute was applied in incidents occurring in parking lots, *see, e.g., Brunner v. Trustees of Purdue Univ.,* 702 N.E.2d 759 (Ind.Ct.App.1998), *trans. denied,* and, more often, sidewalks. Sidewalks are particularly analogous to the walkway in the instant case. Within the meaning of the ITCA, a sidewalk may be a public thoroughfare even if its only use is to provide ingress and egress to a public facility that is not used by every member of the public. *See Yerkes v. Heartland*

*Career Ctr.,* 661 N.E.2d 558 (Ind.Ct.App. 1995), *trans. denied.* The walkway functioned as a sidewalk used by the public to visit the lighthouse. Thus, it is a "public thoroughfare" within the meaning of the ITCA.

I.C. § 34–13–3–3(3) provides immunity for temporary conditions caused by weather, but does not grant immunity for a condition that is permanent or not caused by the weather. *Catt v. Board of Com'rs of Knox County,* 779 N.E.2d 1. It is apparent that the designation of the injury-producing condition as either "temporary" or "permanent" is one determinative factor in deciding whether the governmental entity is immune from liability for that injury. In the instant case, it is *the* determinative factor.

In *Catt,* our supreme court stressed that deciding whether a condition is temporary or permanent is a threshold determination that is to be made independent of the allegations of negligence asserted against the defendant. That is, in determining whether the condition in question is "temporary" and, therefore, the defendant immune, courts should not consider such factors as poor inspection, design, or maintenance of the thoroughfare. Rather, the court explained, the focus is on whether the governmental defendant has had the time and opportunity to, for instance, remove snow or ice that has accumulated on a road or sidewalk. Of course, although I.C. § 34–13–3–3(3) is most often applied in cases where accumulated snow or ice is alleged to be a contributing factor in an injury-producing accident, it applies as well to any condition resulting from weather. Thus, in *Catt v. Board of Com'rs of Knox County,* 779 N.E.2d 1, the court held that the governmental defendant was immune for injuries caused when an automobile slid into a ditch created when a

culvert was washed out by heavy rains. In *Catt*, the court indicated that the fact and frequency of previous washouts had no bearing on the analysis of whether immunity existed in the first place. Rather, that analysis focused on determining if the injury producing condition was caused by weather, and, assuming it was, if that condition was temporary or permanent, as those concepts are defined above.

It is undisputed that Kyle was washed off of the walkway by a large wave that rolled in off of the waters of Lake Michigan as a result of high winds and heavy weather in the area at the time. We can find no evidence designated by the Appellants that would support an inference that the wave was anything other than a rogue wave—as opposed to one of many such waves that broke over the walkway on the East Pier that day. The wave was thus analogous to an isolated patch of ice that develops during a snowstorm.

As discussed above, there is well-developed case law to the effect that a governmental defendant is immune from liability for injuries stemming from a buildup of ice on a sidewalk if that buildup is not permanent. *See, e.g., Catt v. Board of Com'rs of Knox County*, 779 N.E.2d 1. "Permanency" in this context is a function of the governmental defendant's awareness of *that particular* hazard and the opportunity, based on that awareness, to neutralize the hazard. In the instant case, the Appellants did not designate any materials tending to show that the City was aware of the wave. We reiterate that it would not have been enough to show that high waves may or indeed even did result whenever inclement weather was present in the area. Such may be relevant on the question of negligence, but not immunity. *See id.* Rather, the Appellants were required to designate materials tending to show both (1) that the City was aware that large,

dangerous waves were in fact washing over the East Pier around the time Kyle was swept off of the pier, and (2) that, armed with such knowledge, the City had time to remedy the situation. The Appellants failed to designate such material. As a result, we must conclude that Kyle's death was caused by a temporary condition on the walkway that resulted from weather. *See* I.C. § 34–13–3–3(3). Accordingly, even if the City had a general duty to members of the public with regard to the walkway, it is immune from liability for the wave that swept Kyle from the pier.

Judgment affirmed.

ROBB, J., concurs.

VAIDIK, J., concurs in result.