**Marvin J. HOCHSTETLER, Appellant–Plaintiff,**

v.

**ELKHART COUNTY HIGHWAY DEPARTMENT, Elkhart County Sheriff's Department and Elkhart County Commissioners, Appellees–Defendants.**

No. 20A05–0602–CV–98.

Court of Appeals of Indiana.

Oct. 25, 2006.

Jeffrey J. Stesiak, Pfeifer, Morgan & Stesiak, South Bend, IN, Attorney for Appellant.

Michael F. Deboni, Sara J. MacLaughlin, Yoder, Ainlay, Ulmer & Buckingham, Goshen, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Marvin J. Hochstetler appeals from the trial court's order granting the motion of Elkhart County Highway Department ("Highway Department"), Elkhart County Sheriff's Department, and Elkhart County Commissioners (collectively "Elkhart") for summary judgment on Hochstetler's complaint alleging that he sustained injuries as a result of Elkhart County's negligence. Hochstetler presents a single issue for review, namely, whether the trial court erred

when it granted summary judgment in favor of Elkhart County.

We reverse.

## FACTS AND PROCEDURAL HISTORY

At 1:00 a.m. on June 12, 2001, a storm passed through Elkhart County. After the storm, a Highway Department employee prepared a report indicating that there were fifty-six reports of fallen trees and limbs on county roads. Because of the fallen trees, Robert Ganger, a Highway Department employee, fielded telephone calls reporting fallen trees that night, and he began dispatching clean-up crews at 1:30 a.m.

Ganger received a call at 2:00 a.m., in which a woman reported a tree across the road on County Road 4 north of State Road 120 and south of the Indiana Toll Road. After the caller hung up, Ganger realized that County Road Four runs the width of Elkhart County and that County Road 4 and State Road 120 do not intersect. Because Ganger could not identify the location of the fallen tree from the caller's report, he did not dispatch a crew at that time to County Road 4 to remove the tree. Shortly thereafter, Ganger received a report of a tree in the roadway on County Road 4 between County Roads 13 and 15. The reference to County Roads 13 and 15 provided east/west coordinates that helped Ganger pinpoint the location of the fallen tree. When that call came in, "and no more calls [came in] for a while, [Ganger] assume[d] that [the fallen tree on County Road 4] would have been taken care of." Appellant's App. at 49.

At 5:00 a.m. the same morning, Hochstetler was injured driving on County Road 4 when his vehicle struck a tree that had fallen across County Road 4 during the storm, and he sustained bodily injuries. The accident occurred between County Roads 35 and 39. As a result of the accident, the Highway Department received a report of that particular tree obstruction at 5:00 a.m. Barricades were placed around the downed tree between 6:30 and 7:00 a.m., and road crews arrived to remove the tree from the roadway at 8:15 a.m.

Hochstetler filed a complaint against Elkhart County, alleging that his injuries were the result of the "negligence and carelessness of [Elkhart County]." Appellant's App. at 11. Elkhart County filed a motion for summary judgment, claiming it was immune from liability under Indiana Code Section 34–13–3–3(3). After a hearing, the trial court granted Elkhart County's motion. Hochstetler filed a motion to correct error, which the trial court denied after a hearing. This appeal ensued.

## DISCUSSION AND DECISION

When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind.Ct. App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Jesse v. Am. Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App. 2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000). If the trial court's entry of summary judgment can be sustained

on any theory or basis in the record, we must affirm. *Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App. 2000), *trans. denied.* Even if the trial court believes that the non-moving party will not prevail at trial, where material facts conflict or conflicting inferences arise from the undisputed facts, summary judgment should not be entered. *Schrum v. Moskaluk*, 655 N.E.2d 561, 564 (Ind.Ct. App.1995), *trans. denied.*

Hochstetler contends that the trial court erred when it granted summary judgment. In particular, Hochstetler argues that the trial court erred when it found that his claim was barred by Indiana Code Section 34–13–3–3(3), one part of the immunity provision of the Indiana Tort Claims Act ("the Act"). We must agree.

Indiana Code Section 34–13–3–3(3) provides in relevant part: "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . (3) the temporary condition of a public thoroughfare which results from weather." Our supreme court addressed governmental immunity under that section in *Catt v. Board of Commissioners*, 779 N.E.2d 1 (Ind.2002):

> The sole issue presented on transfer is whether the County is immune from liability pursuant to the Indiana Tort Claims Act. The Act "allows suits against governmental entities for torts committed by their employees but grants immunity under the specific circumstances enumerated in Indiana Code [S]ection 34–13–3–3." Immunity under the Act is a question of law to be decided by the court. The party seeking immunity bears the burden of establishing it.

*Id.* at 3 (internal citations omitted). Governmental immunity "assumes negligence but denies liability." *Id.* at 5. Whether a governmental entity is immune from liability under the Act is a question of law for the courts, although it may include an extended factual development. *City of Hammond v. Reffitt*, 789 N.E.2d 998, 1001 (Ind.Ct.App.2003), *trans. denied.*

Hochstetler argues that a material question of fact exists as to whether the condition was temporary as contemplated in Indiana Code Section 34–13–3–3(3). This court addressed the meaning of "temporary" in that provision in *Dzierba v. City of Michigan City*, 798 N.E.2d 463 (Ind.Ct. App.2003). There a large wave rolled in off the waters of Lake Michigan due to high winds and heavy weather in the area and washed a child off a pier attached to a city park.[1] The child drowned, and the child's parents filed suit against the city and others.

In determining whether the city was immune from liability under Indiana Code Section 34–13–3–3(3), the court observed that " 'permanency' in [the context of Indiana Code Section 34–13–3–3(3) ] is a function of the governmental defendant's awareness of that *particular* hazard and the opportunity, based on that awareness, to neutralize the hazard." *Id.* at 470 (emphasis in original). The parents failed to designate materials that tended to show both "(1) that the City was *aware* that large, dangerous waves were in fact washing over the East Pier around the time Kyle was swept off of the pier, and (2) that, armed with such knowledge, the City *had time to remedy* the situation." *Id.* (emphasis added). As a result, the court affirmed the grant of summary judgment in favor of the city on the issue of immunity under Indiana Code Section 34–13–3–3(3).

---

1. The pier is owned by the United States Army Corps of Engineers.

Likewise, in *Catt*, it was uncontested that the governmental entity had no notice of the hazardous condition before the accident. There, a driver on a county road crashed into a ditch because early morning heavy rains had washed out a culvert under the road. The driver filed suit against the county board of commissioners. On appeal from summary judgment in favor of the board, our supreme court observed that "the focus of whether the condition is permanent is whether the governmental body has had the time and opportunity to remove the obstruction but failed to do so." *Catt*, 779 N.E.2d at 5 (citation omitted). The driver apparently designated no material aside from the history of prior wash-outs to show the board's notice of the hazardous road condition, but the court held that prior wash-outs of the same culvert did not render the condition permanent. *Id.* Thus, the court affirmed summary judgment in favor of the board under Indiana Code Section 34–13–3–3(3).

Here, Hochstetler bears the burden of showing that the county had time and an opportunity to remove the fallen tree. To that end, Hochstetler has shown that a citizen telephoned the Highway Department at 2:00 a.m. to report that a tree was lying across County Road 4 north of State Road 120 and south of the Indiana Toll Road in Elkhart County. Hochstetler's accident occurred about three hours later, at 5:00 a.m. When the Highway Department received that report, the caller gave Elkhart County enough information that put Elkhart County on notice to investigate and locate the fallen tree. A subsequent caller reported what turned out to be another fallen tree on County Road 4, and whether that information relieved Elkhart County of its duty to investigate the location of the first report of a fallen tree on County Road 4 is a question of fact. Even if it were determined that Elkhart County had notice of the fallen tree,

whether it had enough time to "remedy the situation" is a question of material fact. *See id.* Again, although immunity is a question of law, answering that question may require the development of factual issues. *See Reffitt*, 789 N.E.2d at 1001. Thus, the trial court erred when it granted summary judgment in favor of Elkhart County.

Elkhart County contends that its knowledge of the fallen tree on County Road 4 is not required to determine immunity because the dispositive issue is whether the condition is temporary or permanent. Elkhart County also relies on *Catt* to support its contention that actual or constructive knowledge is not required to determine whether a condition is temporary or permanent. We agree with Elkhart County that the overall issue is whether the fallen tree was temporary or permanent. But Elkhart County misunderstands *Catt*. The court in that case specifically noted that the board did not have knowledge of the washed out culvert; thus, it had no opportunity to remedy the situation. *See Catt*, 779 N.E.2d at 5. Elkhart County also cites to *Leinbach v. State*, 587 N.E.2d 733 (Ind. Ct.App.1992), to support its argument that the fallen tree in the case before us was a temporary condition. In *Leinbach*, winter rain fell and then froze because of low temperatures, causing an overpass to become ice-covered. A motorist died as the result of an accident on the overpass a few hours after the winter storm began. In a resulting suit by Leinbach's estate against governmental entities, this court affirmed summary judgment for the governmental entities on the immunity issue. We held that "there can be no doubt that the icy condition of the overpass when Leinbach's accident occurred was a 'temporary condition of a public thoroughfare which results from weather' ...." *Id.* at 735 (no citation in original). But *Leinbach* was decided

ten years before our supreme court's decision in *Catt*, where the court specifically considered whether the governmental entity had knowledge and an opportunity to remedy a condition in order to determine whether the condition was temporary. We must follow that precedent.

Elkhart County also cites to *Van Bree v. Harrison County*, 584 N.E.2d 1114 (Ind. Ct.App.1992), *trans. denied*, in support of its contention that the fallen tree in this case was a temporary condition. In that case, a young driver and her parents sued governmental entities to recover for injuries the driver sustained when she struck a county dump truck on an icy county road. The highway department had received complaints about the condition of the road, which had been icy since early in the week of the accident. In granting judgment on the evidence in favor of the governmental entities, the trial court determined, in part, that the governmental entities were immune from liability under a predecessor to Indiana Code Section 34–13–3–3(3).[2] On appeal, this court affirmed, holding that "the duty was on Van Bree to present evidence that the road had become defective because of the snow and ice and that the county had time and opportunity to remove it." *Id.* at 1118. But *Van Bree*, like *Leinbach*, was decided ten years before the supreme court decided *Catt*. And, further, in order to determine whether the county had an opportunity to remedy the road condition, it first had to be aware of that condition.

We conclude that, in the context of Indiana Code Section 34–13–3–3(3), whether a condition is temporary must be determined by first deciding (1) whether the governmental entity had knowledge of the condition and (2) if so, whether the governmental entity had an opportunity to reme-

dy the situation. Here, there is an issue of material fact as to whether the caller's 2:00 a.m. report put Elkhart County on inquiry notice of the location of a fallen tree on County Road 4, even though a subsequent caller adequately identified the location of what turned out to be another fallen tree on the same road. Even if we were to conclude that the first report gave notice of the location of the fallen tree, whether Elkhart County had an opportunity to remedy the situation, given that fifty-five other trees and limbs had to be cleared from Elkhart County roads from the same storm, is a question of material fact to be determined in deciding whether the condition of the fallen tree was temporary. Following *Catt* and in light of these questions of material fact, we hold that the trial court erred when it granted summary judgment in favor of Elkhart County on the issue of immunity under Indiana Code Section 34–13–3–3(3).

Reversed.

DARDEN, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I would affirm the grant of summary judgment in favor of Elkhart County, and therefore respectfully dissent.

The statute upon which this case must be decided states, "[a] governmental entity ... is not liable if a loss results from ... [t]he temporary condition of a public thoroughfare ... that results from weather." Ind.Code Ann. § 34–13–3–3(3) (West, PREMISE through 2006 Public Laws approved and effective through March 15, 2006). On the face of it, it would seem the facts before us fit squarely within the

---

**2.** The predecessor to Indiana Code Section 34–13–3–3(3) is Indiana Code Section 34–4– 16.5–3(3), which in relevant part is identical to the current immunity provision.

boundaries of this provision. In the early morning hours of June 12, 2001, a violent storm blew a tree down onto a county road. Approximately four hours later, a motorist was injured when his vehicle struck that tree. Clearly, the roadway obstruction was caused by bad weather. Hochstetler does not allege otherwise, but contends there remain questions of fact necessary to determine whether the condition was "temporary" within the meaning of I.C. § 34–13–3–3(3). The majority agrees.

Analyzing *Dzierba v. City of Michigan City*, 798 N.E.2d 463 (Ind.Ct.App.2003) and *Catt v. Bd. Of Comm'rs*, 779 N.E.2d 1 (Ind.2002), the majority concludes the County's claim of immunity hinges—and ultimately fails—upon two questions: (1) did the County have notice of the fallen tree, and (2) if so, did it have time to remove the tree before the accident occurred? In reversing the trial court's ruling, the majority rejects both *Leinbach v. State*, 587 N.E.2d 733 (Ind.Ct.App.1992) and *Van Bree v. Harrison County* 584 N.E.2d 1114 (Ind.Ct.App.1992), *trans denied.* Those decisions support the County's argument in this case, but the majority deems them to be in conflict with *Catt*, and thus superceded by it. Do they, in fact, conflict with *Catt*? I think not.

The facts of *Van Bree* and *Leinbach* are set out in the majority opinion and I need not repeat them here. To summarize, in both cases, this court determined that the governmental entity was immune from liability for accidents on roads that were icy as a result of inclement weather. In *Leinbach*, the accident occurred "within a few hours after the storm began," *Leinbach v. State*, 587 N.E.2d at 735, and in *Van Bree*, the accident occurred on a road that the plaintiff claimed had been icy for four or five days. In the latter case, the court acknowledged that the term "temporary"

is not so broad as to include everything that is "not permanent". *Van Bree v. Harrison County* 584 N.E.2d at 1117. We might infer from this that a period of four or five days between the creation of a dangerous condition and an accident caused thereby is long enough, when considered in isolation, to cast doubt upon the temporariness of the condition. The court decided, however, that elapsed time alone did not settle the question. Also considered in the temporariness analysis was the governmental entity's opportunity to remedy the situation. In fact, it is upon that basis that the court affirmed the judgment of immunity, stating there was no evidence "from which a jury could infer that the County had an opportunity to treat the road before" five days had passed. *Van Bree v. Harrison County*, 584 N.E.2d at 1118. The court noted in that regard a supervisor's testimony that the county "was responsible for over a thousand miles of county roads and that the crews had been out all week spreading salt and gravel on the roads." *Id.* In *Leinbach*, the time between the onset of the condition and the accident was much shorter, but the analysis was similar. Thus we learned in *Van Bree* and *Leinbach* that temporariness was a function not only of knowledge of the dangerous condition, but also of (1) the time elapsed between the weather that caused the dangerous condition and the accident, and (2) the governmental entity's ability, *in light of the circumstances*, to remedy the condition. In my view, *Catt* did not alter this analysis and it is upon this point that my views diverge from those of the majority.

The majority concludes the Supreme Court in *Catt* affirmed immunity primarily, if not solely, on the basis that the governmental entity did not have knowledge of the dangerous condition. Although that is true, it does not signal a change in the law as applied in *Leinbach* and *Van Bree*.

Rather, *Catt* simply illustrates the point that the failure of one element when two are required obviates the need to analyze the second element. *See, e.g., Young v. State,* 746 N.E.2d 920 (Ind.2001) (because two elements are required to prove a claim of ineffective assistance of counsel, the court may dispose of the entire claim if it concludes one element was not proven, without need to consider the second element). In this case, that means that even if Hochstetler sufficiently established that the County knew of the downed tree, he must also present sufficient evidence to show that it had the opportunity to remedy the situation but failed to do so. *Catt, Leinbach,* and *Van Bree* permit us to consider all of the circumstances in making that determination as a matter of law.

In my view, the majority's approach virtually precludes the possibility of immunity in almost every circumstance of this type. The instant case illustrates the point. A violent storm blew through the county and left numerous trees and limbs scattered on county roads. Although it occurred in the early morning hours when traffic was presumably light, the scope of the storm damage generated more than fifty telephone reports of downed trees and limbs within the first few hours. Barely four hours after the storm passed, a motorist struck one of the downed trees. These facts support a ruling of immunity. By relegating the questions of knowledge and opportunity always to the realm of jury questions, as the majority seems to have done here, it necessarily forecloses the possibility of immunity, as that is a legal determination made by the court. In my view, the facts need no further development to support a holding of immunity.

As to the first element, it is undisputed that the first person who called to report the downed tree in question described a location that was impossible to trace, in that it was described as being near an intersection of two roads that run parallel to one another. The second call described the tree as being located on County Road 4 between County Roads 13 and 15. In fact, the tree fell—and the accident occurred—on County Road 4 between County Roads 35 and 39. The County became aware of the actual location only when it was apprised that an accident had occurred at that site.

Turning to the time and opportunity to remedy, I note that when the County learned of the *actual* location of that particular downed tree at approximately 5:00 a.m., it took almost three-and-one-half hours for a crew to arrive at the scene and to begin the task of removing the tree. This is not surprising in view of the facts that the storm had passed so recently and the resultant destruction was apparently so significant and widespread. Even assuming it knew of the existence and location of the downed trees, to hold that the County is not immune with respect to *one* that it was unable to remove in the first hour or two necessarily means that it was not immune with respect to *any* of them. Thus, the majority's analysis leads to the ironic result that the greater the natural disaster and the more widespread the dangerous conditions caused by such a natural calamity, the less likely the County will be immune from liability because in each instance a jury will be allowed to decide whether the County could hypothetically have taken care of that component of a much larger problem.

In the instant case, I believe the phone calls reporting the tree in question were too inaccurate to apprise the County of the location of the downed tree that caused Hochstetler's accident. Thus, the County had no knowledge and was immune on that basis. *See Catt v. Bd. Of Comm'rs,* 779 N.E.2d 1. Moreover, given the scope of the

problems facing the County in the aftermath of the storm in the early morning hours of June 12, 2001, and the fact that it had a crew at the scene less than five hours after the tree fell, I believe this fits the definition of "a temporary condition ... that results from the weather." I.C. § 34–13–3–3(3). I understand that the majority believes this is a factual question that should be reserved for the jury. On these facts, however, I believe we should hold that, as a matter of law, this condition was "temporary" within the meaning of the statute and the County is immune from liability therefor.