**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KENNETH G. DOANE, JR.**
Doane Law Office, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**RICHARD T. MULLINEAUX**
**CRYSTAL G. ROWE**
**WILLIAM F. ENGLISH**
Kightlinger & Gray, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALMA STANBARY, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 39A01-1312-CT-537 |
| | ) | |
| MADISON-JEFFERSON COUNTY | ) | |
| LIBRARY, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable W. Gregory Coy, Special Judge
Cause No. 39C01-1206-CT-605

**May 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Alma Stanbary appeals the trial court's summary judgment ruling in favor of the Madison-Jefferson County Library (the "Library"). Stanbary raises one issue, which we revise and restate as whether the court erred in granting summary judgment in favor of the Library. We affirm.

FACTS AND PROCEDURAL HISTORY

The facts favorable to the nonmoving party reveal that, at approximately 3:50 p.m. on January 21, 2012, Stanbary, a corrections officer, received an assignment to pick up three work release participants at the Library building near downtown, Madison, Indiana. Stanbary parked her vehicle, walked to the entrance on the west side of the Library building, and walked up the six steps to the door. Stanbary discovered that the door was locked and turned around to walk back down the steps. When Stanbary reached the top step, her "feet went out from under [her]" and she fell and sustained injuries. Appellant's Appendix at 29.

On June 28, 2012, Stanbary filed a complaint against the Library which alleged in part that she was injured at the Library building when she fell due to the negligent failure to act by the Library and that the Library knew or should have known of the unreasonable risk of danger to her but failed either to discover it or to correct it after discovery. The Library filed an answer and affirmative defenses and alleged as an affirmative defense that it is a governmental entity immune from liability in the action pursuant to Ind. Code § 34-13-3-3.

On May 31, 2013, the Library filed a motion for summary judgment together with designated evidence and a supporting memorandum. In its memorandum, the Library

2

stated that it assumed for the purposes of its summary judgment motion that there was ice on the stairs that caused Stanbary to slip and fall, and argued that the alleged ice was a temporary condition resulting from weather and therefore it is immune from liability pursuant to Ind. Code § 34-33-3-3(3). Specifically, the Library argued that weather data established that any ice on the stairs formed on January 21st sometime between the morning precipitation and Stanbary's fall at 4:30 p.m., that prior to January 21st it had not rained since January 17, 2012, when it rained less than half an inch, that the temperatures on January 17th were "in the 50s (and 60s), and thus the rain on the 17th did not cause the ice," that "precipitation occurred before daylight on January 21, 2012 during freezing temperatures," the "temperature dropped even further below freezing as the day progressed," and therefore that "there is no genuine issue of material fact regarding whether the ice was caused by the precipitation and freezing temperatures in Madison on the morning of January 21st," and the ice was temporary within the meaning of Ind. Code § 34-13-3-3(3). Id. at 87-88. The Library also argued that the undisputed designated evidence shows that the Library did not have notice of the ice on the stairs, learned of the ice only after Stanbary fell, and thus had no opportunity to remedy the ice.

In her response in opposition to the Library's motion for summary judgment, Stanbary argued that the undisputed facts establish that on January 21, 2012, the Library's staff opened the Library building for the entire scheduled day and did not take any action to inspect or treat any of the premises for weather-related conditions, including ice, and thus that the condition in question was not temporary under Ind. Code § 34-13-3-3(3). Stanbary further argued that, on the morning of January 21, 2012, the Library's

3

assistant director knew that a significant number of her staff did not report to work due to weather-related conditions and that there were sufficient staff and supplies available to inspect and treat the Library building's walks and steps. The Library filed a reply memorandum of law in which it maintained that, although Stanbary apparently argued that it had constructive notice of the ice because three employees indicated they could not come to work because of weather-related conditions near their homes, Indiana courts have refused to impute constructive knowledge of a weather condition which occurs the night prior to an accident, that constructive knowledge has only been imputed where the weather condition persisted for several days, and that here it designated evidence that the earliest the ice could have formed was in the early morning before Stanbary's accident. The Library also argued that when the assistant director arrived at the Library building there was no indication there was any ice anywhere on the Library premises.

Following a hearing, the trial court entered an order granting the Library's motion for summary judgment on November 18, 2013. The court found that the Library had shown that it had no notice of the temporary condition on the side steps of the Library building, that one employee entered from the rear parking lot in the morning and did not notice any ice in the lot prior to 8:00 a.m., that the weather data showed the temperature dropped throughout the day, and that in the days leading up to the fall the weather was warmer and no precipitation was recorded. The court further found that the Library had no opportunity to remedy the ice on the steps, that lack of notice to the Library was undisputed, that Stanbary testified in her deposition that she did not think the Library had any notice of the ice, and that Stanbary could not see the ice the first time she walked up

4

the stairs so notice of the ice cannot be imputed to the Library. The court concluded that the Library is entitled to immunity as a matter of law pursuant to Ind. Code § 34-13-3-3(3) and entered summary judgment in favor of the Library and against Stanbary.

## ISSUE AND STANDARD OF REVIEW

The issue is whether the trial court erred in granting summary judgment in favor of the Library and against Stanbary. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Commr's of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id. We review a summary judgment order *de novo*. Bules v. Marshall Cnty., 920 N.E.2d 247, 250 (Ind. 2010).

5

DISCUSSION

The tort of negligence has three elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. Rhodes v. Wright, 805 N.E.2d 382, 385 (Ind. 2004). Summary judgment is appropriate when the undisputed material evidence negates one element of a claim. Id.

A governmental entity has a duty to maintain public thoroughfares. Bules, 920 N.E.2d at 250. "This duty requires the entity to adopt appropriate precautions—including warning of hazardous road conditions or temporarily closing roads—to prevent persons exercising due care from suffering injury." Id. The Indiana Tort Claims Act provides immunity to liability for breach of this duty. Id. At the time of Stanbary's fall, Ind. Code § 34-13-3-3 provided that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . . (3) The temporary condition of a public thoroughfare or extreme sport area that results from weather." (Subsequently amended by Pub. L. No. 220-2103, § 2 (eff. Jul. 1, 2013) (no substantive amendments to subsection (3))). "Immunity under subsection (3) requires that the loss result from a condition that is both 'temporary' and 'caused by weather.'" Bules, 920 N.E.2d at 250. Whether an immunity applies is a matter of law for the courts to decide. Id. The party seeking immunity bears the burden of establishing the immunity. Id.

Stanbary argues the Library building was open for the entire scheduled day on January 21, 2012, the Library staff did not take any action to inspect or treat any of the

6

premises for weather-related conditions, the Library had the manpower and opportunity to inspect and treat the premises before she fell, and thus "the condition in question was not 'temporary,' and the Library is not immune pursuant to the Indiana Tort Claims Act." Appellant's Brief at 8. Stanbary asserts that Virgie Dowell, the assistant director of the Library, arrived at the Library building between 7:40 and 8:00 a.m. on January 21, 2012, that four employees scheduled to work that day called Dowell to advise they would not be in to the Library or would be reporting late due to weather-related conditions on the roads, that Dowell knew that a significant number of her staff did not report to work due to weather-related conditions, and that at no time during the morning or afternoon did Dowell or any other Library staff on duty attempt to inspect or treat the Library's premises.

The Library argues that trace amounts of precipitation, coupled with the declining temperatures that persisted throughout the day of January 21, 2012, caused the water or dampness to turn to ice on the steps, that "[a]ny rain or other precipitation that occurred in Madison prior to January 20, 2012 fell while the outside temperature was 57°F (or well above freezing)," and thus that the weather condition was temporary under Ind. Code § 34-13-3-3(3). Id. The Library asserts that Stanbary's arguments related to whether Library employees had called in due to icy road conditions or the Library had the necessary manpower to inspect and treat the condition "miss the mark," and that "the appropriate 'temporary' analysis . . . is whether the Library was aware (or had notice of) the particular hazard in question and, further, whether it had both the time and opportunity to remove or neutralize such hazard." Id. at 19. The Library maintains that

7

the undisputed evidence established that it had no notice of the icy condition of the steps until after Stanbary fell, that Stanbary testified she did not believe the Library was aware of the icy steps prior to her fall, and that the ice was clear and not "real noticeable just looking at it." Id. at 20 (citing Appellant's Appendix at 30). The Library also argues that evidence about road conditions on residential neighborhood streets located several miles away from downtown Madison does not bear on the conditions of the steps at the Library at the time of Stanbary's accident.

Stanbary does not dispute that the Library is a governmental entity, that her fall occurred on a public thoroughfare, or that her fall was a result of a condition caused by the weather, i.e., the formation of ice on the step on which she slipped. Stanbary's arguments relate to whether the condition was "temporary" within the meaning of Ind. Code § 34-13-3-3(3). Ind. Code § 34-13-3-3(3) "has been applied most often in cases involving the removal of snow and ice from roadways and sidewalks." Dzierba v. City of Michigan City, 798 N.E.2d 463, 469 (Ind. Ct. App. 2003). The statutory provision "provides immunity for temporary conditions caused by weather, but does not grant immunity for a condition that is permanent or not caused by the weather." Id. (citation omitted). In determining whether the condition in question is "temporary" and, therefore, the defendant is immune, courts should not consider such factors as poor inspection, design, or maintenance of the thoroughfare. Id. Rather, the focus is on whether the governmental defendant has had the time and opportunity to, for instance, remove snow or ice that has accumulated on a road or sidewalk. Id. "There is well-developed case law to the effect that a governmental defendant is immune from liability for injuries

8

stemming from a buildup of ice on a sidewalk if that buildup is not permanent." Id. at 470. "'Permanency' in this context is a function of the governmental defendant's awareness of that particular hazard and the opportunity, based on that awareness, to neutralize the hazard." Id.

The designated evidence shows that there was 0.41 inches and 0.02 inches of precipitation, measured at 11:56 a.m. and 12:56 p.m., respectively, on January 17, 2012, that the high temperature on that day was fifty-seven degrees Fahrenheit, and that there was not any precipitation on January 18 through January 20, 2012. There were trace amounts of precipitation measured at 9:56 p.m. on January 20, 2012, when the temperature was thirty-six degrees Fahrenheit, and again at 1:56 a.m. and 2:56 a.m. on January 21, 2012, when the temperature was thirty-two degrees Fahrenheit. The temperature on January 21, 2012, was thirty degrees Fahrenheit at 7:56 a.m., and twenty-nine degrees Fahrenheit at 4:56 p.m.

In her deposition, Dowell testified that she arrived at the Library building for work on January 21, 2012, between 7:40 a.m. and 8:00 a.m. She testified that several employees called the Library to indicate they were not traveling to work due to the roads,[1] that she was surprised the employees called in because she lived eight miles from work, that she does not walk to the car by herself if the roads are slick, and that her husband did not drive her to work that day. Dowell further testified that, when she arrived at the Library building, "the parking lot was clear, wet, damp," that "there were

---

[1] Dowell indicated one employee stated that the "roads where she lives, which is sort of out in the country, were bad enough that her husband did not want her driving at that hour of the morning," that another employee had called in due to the "bad roads," that an employee had called to say she would be late due to the roads in her subdivision, and that another employee called in due to ice. Appellant's Appendix at 102-103.

9

wet spots, but there was no – nothing that seemed dangerous to me," and that "we do have back stairs coming up to the back porch. Everything seemed normal, so I had no reason to check." Appellant's Appendix at 104. Dowell testified that "it was relatively mild and just kind of rainy," that she was not aware there had been freezing temperatures, and that "January 21st was not a bad weather day." Id. at 105. She also stated "the streets were wet but not icy" and "[t]here was no visible ice or any treacherous-looking places on my coming to work." Id. at 109. When asked "[a]nd I believe you testified that when you arrived at work, the employee parking lot at the Library was wet and there were some puddles," Dowell said "[t]hat's correct," and when asked if "any of those puddles [were] frozen," Dowell stated "[n]o." Id. When asked if she saw any ice anywhere when she arrived at work on the Library premises, Dowell replied "No, but I wasn't particularly looking . . . it just looked like, you know, a rainy day." Id. Dowell testified she had no indication upon arriving at work that there was any ice on the Library premises or that it was going to freeze that day.

Stanbary testified during her deposition that there was "patchy snow" in the grassy areas by the sidewalk. Id. at 27. She indicated that she did not notice any ice on the sidewalk, that there was salt on the sidewalk in front of the Library, and that there was no salt at the top of the stairs. She indicated that she did not notice any ice or snow on the stairs when she was walking up them. Stanbary testified "[a]fter this all was over, we looked at the steps and there was ice all over that area where I'd went down," that "[i]t was, like halfway on the step – ice; like the first three or four steps down," that it was "[h]alfway back to the back" and "[i]t's like half, from about half back to the next step,"

10

and that "[t]o the best of my memory, it was pretty much scattered on the steps." Id. at 30. When asked to describe the ice, Stanbary testified "It was clear. And this is a rocky-type step, so it wasn't real noticeable just looking at it." Id. She indicated that she looked at the stairs when she climbed them and did not see any ice. When asked if she was aware of whether the Library had any notice there was ice on the stairs, Stanbary testified "I don't know. I don't think they were aware of it because of statements they made when they came out." Id. at 31.

The weather data and deposition testimony designated by the parties show that the particular hazard in this case, i.e., the ice that had formed on the step on which Stanbary slipped, was a temporary condition and that the Library was unaware of the condition. We conclude that the Library designated evidence demonstrating that the ice which caused Stanbary's fall was a temporary condition resulting from the weather, pursuant to Ind. Code § 34-13-3-3(3), and thus that the Library is immune from liability in this action. See Hochstetler v. Elkhart Cnty, Highway Dept., 868 N.E.2d 425, 426-427 (Ind. 2007) (noting that the county had no notice of the wash-out until the driver's accident, that the county highway department was busy on the morning after the storm repairing other washed-out culverts of which it was aware and holding that the county carried its burden to show it was entitled to immunity because the weather-related condition was temporary under Ind. Code § 34-13-3-3(3)); Catt, 779 N.E.2d at 3-6 (holding that the governmental entity showed that the washed-out culvert was the result of a rainstorm and that it had no notice that the culvert washed out until after the plaintiff's accident and concluding the governmental entity carried its burden of demonstrating that the condition

11

of the roadway was temporary and resulted from weather and therefore that it was immune under Ind. Code § 34-13-3-3(3)); Dzierba, 798 N.E.2d at 470 (holding that there was no designated evidence supporting an inference that a wave which swept over a pier was anything other than a rogue wave as opposed to one of many such waves that broke over the walkway, that the "wave was thus analogous to an isolated patch of ice that develops during a snowstorm," that the appellants failed to show the governmental entity was aware that large, dangerous waves were in fact washing over the pier, and that the accident was caused by a temporary condition on the walkway resulting from weather, and thus that the governmental entity was immune from liability under Ind. Code § 34-13-3-3(3)); Babinchak v. Town of Chesterton, 598 N.E.2d 1099, 1100-1102 (Ind. Ct. App. 1992) (noting that the plaintiff slipped and fell on dirt covering the sidewalk which was wet from the previous night's rain, and holding that the town was statutorily immune from liability for the temporary condition of a public thoroughfare resulting from weather), reh'g denied; cf. Gary Cmty. Sch. Corp. v. Roach-Walker, 917 N.E.2d 1224, 1228 (Ind. 2009) (observing there was no indisputable evidence establishing whether the plaintiff fell on an isolated ice patch that resulted from temporary cold that morning or on a sheet of ice that had been there for days, and holding that the school failed to demonstrate that it was entitled to immunity as a matter of law); Smithson v. Howard Reg'l Health Sys., 933 N.E.2d 1, 5-7 (Ind. Ct. App. 2010) (noting in part that the designated evidence showed the slick parking surface may have resulted from melting and re-freezing snow and ice that may have been present for four days and that a genuine issue of material fact existed rendering summary judgment improper). Accordingly, the

trial court did not err in entering summary judgment in favor of the Library and against Stanbary.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order granting the Library's motion for summary judgment.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.

13